TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 96-214 |
| of | : | |
| | : | September 16, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE CALIFORNIA AIR RESOURCES BOARD has requested an opinion on the following questions:

1.      May an air pollution control district adopt a regulation specifying a number of alternative means of emission reduction from which employers must choose, where one of the options is to implement an employee trip reduction plan?

2.      May an air pollution control district adopt a regulation requiring a parking subsidy equivalency program, mandated by state law, as part of a required employer-based trip reduction plan or as one of a number of alternative means of emission reduction from which employers must choose?

CONCLUSIONS

1.      An air pollution control district may adopt a regulation specifying a number of alternative means of emission reduction from which employers must choose, where one of the options is to implement an employee trip reduction plan, provided that the alternatives presented are reasonably practicable.

2.      An air pollution control district may not adopt a regulation requiring a parking subsidy equivalency program, mandated by state law, as part of a required employer-based trip reduction plan or as one of a number of alternative means of emission reduction from which employers must choose.

1.                                                                         96-214

ANALYSIS

The Legislature has enacted a comprehensive statutory scheme (Health & Saf. Code, §§ 39000-44257)[1] to provide "an intensive, coordinated state, regional, and local effort to protect and enhance the ambient air quality of the state" (§ 39001). Local and regional air pollution control districts (§§ 40000-41267; "districts") have primary responsibility for nonvehicular sources of air pollution, while the State Air Resources Board (§§ 39500-39905; "Board") has primary responsibility for the control of air pollution caused by motor vehicles. (§§ 39001, 40000.)

We have previously examined the powers and responsibilities of a district to control nonvehicular sources of air pollution in various circumstances. (See, e.g., 76 Ops.Cal.Atty.Gen. 11 (1993); 75 Ops.Cal.Atty.Gen. 256 (1992); 74 Ops.Cal.Atty.Gen. 196 (1991).) In this opinion we consider the authority of a district to implement trip reduction ("ridesharing") plans for employers and provide parking subsidy equivalency programs. We generally conclude that although a district may adopt a trip reduction plan as one of several alternatives for employers to choose in reducing automobile emissions, it may not enforce a parking subsidy equivalency program.

Before addressing the specifics of the two questions, we note that districts are authorized to adopt and enforce rules and regulations to achieve and maintain state and federal ambient air quality standards within their respective jurisdictions. (§§ 40001, 40702.) Section 40716, subdivision (a) provides in pertinent part:

"In carrying out its responsibilities pursuant to this division with respect to the attainment of state ambient air quality standards, a district may adopt and implement regulations to accomplish both of the following:

"(1)    Reduce or mitigate emissions from indirect and areawide sources of air pollution.

"(2)    Encourage or require the use of ridesharing, vanpooling, flexible work hours, or other measures which reduce the number or length of vehicle trips."

For purposes of section 40716, "indirect . . . sources of air pollution" would include a place of employment which attracts vehicular sources of air pollution. (See 76 Ops.Cal.Atty.Gen., *supra*, 12-13.)

Pursuant to subdivision (a) of section 40717, a district is required to "adopt, implement and enforce transportation control measures for the attainment of state or federal ambient air quality standards to the extent necessary to comply with section 40918, 40919, or 40920." "Transportation control measures" are defined as "any strategy to reduce vehicle trips, vehicle use, vehicle miles

---

[1] All section references are to the Health and Safety Code unless otherwise indicated.

traveled, vehicle idling, or traffic congestion for the purpose of reducing motor vehicle emissions."  (§ 40717, subd. (g).)  Sections 40918, 40919, and 40920 prescribe a set of measures to be included in the attainment plans for districts having moderate, serious, and severe air pollution, respectively.  (See 76 Ops.Cal.Atty.Gen., *supra*, 14, 18.)[2]  Increasingly stringent transportation control measures are required for each successive district category.  (§§ 40918, subd. (c); 40919, subd. (d); 40920, subd. (c).)  In order to meet specified requirements to reduce the rate of increase in passenger vehicle trips and vehicle miles traveled per trip, and to achieve a specified average vehicle occupancy during weekday commute hours, a number of districts have adopted and enforced employer-based trip reduction plans.

In 1995, however, the Legislature enacted section 40929 (Stats. 1995, ch. 607, § 1) as follows:

"(a)    Notwithstanding Section 40454, 40457, 40717, 40717.1, or 40717.5, or any other provision of law, a district, congestion management agency, as defined in subdivision (b) of Section 65088.1 of the Government Code, or any other public agency shall not require an employer to implement an employee trip reduction program unless the program is expressly required by federal law and the elimination of the program will result in the imposition of federal sanctions, including, but not limited to, the loss of federal funds for transportation purposes.

"(b)    Nothing in this section shall preclude a public agency from regulating indirect sources in any manner that is not specifically prohibited by this section, where otherwise authorized by law."[3]

Amendments to federal law in December of 1995 have made trip reduction plans optional, while requiring equivalent emissions reductions.  (See 42 U.S.C. § 7511a (d)(1)(B).)  Such plans are thus no longer "expressly required by federal law" as set forth in section 40929.

Additionally in 1995, with specific regard to the South Coast Air Quality Management District (§§ 40400-40540), the Legislature amended section 40454 (Stats. 1995, ch. 858, § 1) to read as follows:

"(a)    Notwithstanding Section 40457, 40716, or 40717, or subdivision (c) of Section 40717.5, the south coast district shall not adopt or enforce any rule or regulation that would require any employer to submit a trip reduction plan.

---

[2] An additional category for districts having extreme air pollution was added in 1992.  (See § 40920.5.)

[3] Sections 40454 and 40457 deal with requirements for trip reduction plans in the south coast district.  Section 40717 concerns transportation control measures in general, and sections 40717.1 and 40717.5 set forth requirements which must be met by a district in adopting a rule or regulation that imposes a trip reduction measure on employers or other indirect sources.

"(b)    The south coast district may require employers with 100 or more employees at a single worksite to provide ride-matching information and transit information to employees at that worksite."

It is apparent from the enactment of section 40929 and amendment of section 40454 in 1995 that mandatory trip reduction plans may no longer be required for employers.  Yet these recent legislative directives have not eliminated the requirement for districts to attain state and federal ambient air quality standards.

1.    Optional Trip Reduction Plans

Initially we are asked to determine whether section 40454 or section 40929 prohibits a district from adopting a regulation specifying a number of alternative means of emission reduction from which employers must choose, where one of the options is to implement a trip reduction plan.  For present purposes, the operative word in each statute is "require."  Would a district regulation "require" the employer to implement a trip reduction plan if it includes a trip reduction option as one of a number of alternative means of emission reduction from which employers could choose?  We conclude that neither statute precludes adoption of a district regulation having such an optional provision.

In reaching this conclusion, we are guided by well-established principles of statutory construction.  "In construing a statute, our principal task is to ascertain the intent of the Legislature." (*Yoshisato* v. *Superior Court* (1992) 2 Cal.4th 978, 989.)  "In determining intent, we look first to the language of the statute, giving effect to its `plain meaning.'"  (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 208-209.)  "`[C]ourts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.'"  (*Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1097.)  A court may not rewrite a statute by inserting thoughts that have been omitted or by omitting thoughts that have been inserted.  (*Gillett-Harris-Duranceau, etc.* v. *Kemple* (1978) 83 Cal.App.3d 214, 219; 78 Ops.Cal.Atty.Gen. 192, 195 (1995).)  "[A] court . . . will not readily imply an unreasonable legislative purpose," but rather "a practical construction is preferred."  (*California Correctional Peace Officers Assn.* v. *State Personnel Bd.* (1995) 10 Cal.4th 1133, 1147.)  "It is well settled that statutes should be construed in harmony with other statutes on the same general subject."  (*Building Material & Construction Teamsters' Union* v. *Farrell* (1986) 41 Cal.3d 651, 665.)  "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent."  (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)

Applying these principles of construction to the language of sections 40454 and 40929, we observe that the term "require" connotes some form of compulsion.  "Require" normally means "to impose a compulsion or command upon (as a person) to do something:  demand of (one) that something be done or some action taken:  enjoin, command, or authoritatively insist (that someone do something)."  (Webster's New Internat. Dict. (3d ed. 1971) p. 1929.)  Thus, the plain meaning of sections 40454 and 40929 is that employers may not be placed under a compulsion to utilize trip reduction plans as part of a district's effort to attain emissions reduction standards.

Here it is proposed that an employer would be afforded a choice of various emissions reduction strategies, with a trip reduction plan being one option. Other options might include financing the demolition of old vehicles, repairing high-emitting vehicles owned by employees, converting its own vehicles or off-road equipment to clean fuels, purchasing emissions reduction credits from stationary sources, funding a motor vehicle air pollution reduction project such as a shuttle bus service, or implementing any other program that would attain an amount of emissions reduction equivalent to that obtainable through implementing a trip reduction plan. As long as the other options offered to the employer are reasonably practicable, it cannot be said that the employer is, in any meaningful way, being compelled or ordered to implement a trip reduction plan. The employer would remain free to choose an emission reduction strategy which best suits its circumstances.

There is some evidence from the legislative histories of sections 40454 and 40929 that the authors of the 1995 legislative changes intended to completely eliminate the use of employer-based trip reduction plans. However, when looking at a statute's legislative history, courts generally will not consider the individual views of the author, because there is no guaranty that other legislators shared the same view of the statutory purpose. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699-700; *Malick* v. *Department of Transportation* (1993) 17 Cal.App.4th 1819, 1932, fn. 1.) Also, a careful examination of the two legislative histories in question, when read in full, does not support a construction of sections 40454 and 40929 which contradicts the plain meaning of the statutory language.

We conclude that sections 40454 and 40929 allow districts to include a trip reduction plan as one of the options which employers may choose in meeting ambient air quality standards, provided that the other alternatives specified are reasonably practicable.[4]

2.    Parking Subsidy Programs

We are next asked to determine whether a district may adopt and implement a regulation requiring a parking subsidy equivalency program, mandated by state law, either as part of a required employer-based trip reduction plan or as one of a number of alternative means of emissions reduction from which employers must choose. A parking subsidy equivalency program, also know as a "parking cash-out program," is defined and mandated by the Legislature under the terms of section 43845:

---

[4] A separate question was presented by the requester concerning the effect of the 1995 legislation upon preexisting district regulations which required employers to implement trip reduction plans. As of January 1, 1996, the effective date of the 1995 legislative changes, the South Coast Air Quality Management District may not "enforce any rule or regulation that would require any employer to submit a trip reduction plan." (§ 40454.) No district may "require an employer to implement an employee trip reduction program . . . ." (§ 40929, subd. (a).) Accordingly, preexisting district regulations which required employers to implement trip reduction plans would be void and unenforceable as of January 1, 1996. (See *IT Corporation* v. *Solano County Bd. of Supervisors* (1991) 1 Cal.4th 81, 90; *People* ex rel. *Deukmejian* v. *County of Mendocino* (1984) 36 Cal.3d 476, 484-485.) The effect of any current federal restrictions on the removal of a trip reduction plan from a state implementation plan is beyond the scope of this opinion. (See 42 U.S.C. § 7511a(d)(1)(B).)

"(a) In any air basin designated as a nonattainment area pursuant to Section 39608, each employer of 50 persons or more who provides a parking subsidy to employees, shall offer a parking cash-out program.  `Parking cash-out program' means an employer-funded program under which an employer offers to provide a cash allowance to an employee equivalent to the parking subsidy that the employer would otherwise pay to provide the employee with a parking space.

"(b) A parking cash-out program may include a requirement that employee participants certify that they will comply with guidelines established by the employer designed to avoid neighborhood parking problems, with a provision that employees not complying with the guidelines will no longer be eligible for the parking cash-out program.

"(c) As used in this section, the following terms have the following meanings:

"(1) `Employee' means an employee of an employer subject to this section.

"(2) `Parking subsidy' means the difference between the out-of-pocket amount paid by an employer on a regular basis in order to secure the availability of an employee parking space not owned by the employer and the price, if any, charged to an employee for use of that space.

"(d) Subdivision (a) does not apply to any employer who, on or before January 1, 1993, has leased employee parking, until the expiration of that lease or unless the lease permits the employer to reduce, without penalty, the number of parking spaces subject to the lease.

"(e) It is the intent of the Legislature, in enacting this section, that the cash-out requirements apply only to employers who can reduce, without penalty, the number of paid parking spaces they maintain for the use of their employees and instead provide their employees the cash-out option described in this section."

As set forth in section 43845, an employer who provides a parking subsidy to employees must grant "a cash allowance to an employee equivalent to the parking subsidy . . . ."  May a district add such a program as part of a mandatory trip reduction plan for employers or as an option for employers?  We conclude that it may not.

As for a mandatory trip reduction plan, we have concluded in answer to the first question that sections 40454 and 40920 preclude districts from enforcing mandatory trip reduction plans for employers.  Thus, a district may not enforce the terms of section 43845 by instituting or enforcing a parking subsidy equivalency program as part of a required employer-based trip reduction plan.

With respect to making a parking subsidy equivalency program an "option" as one "alternative" means of emissions reduction from which employers may "choose," we find no statutory

basis for such treatment. Section 43845 is clear in its language--the program is mandatory. Employers do not have the option of ignoring its directive. A parking subsidy equivalency in cash is not something to be chosen, rather it is compelled by the Legislature.

Moreover, it is not the responsibility of the districts to enforce the requirements of section 43845. This statute is part of a number of miscellaneous provisions (§§ 43800-43845) administered by the Board. (See also §§ 40000, 43000, 43000.5; 76 Ops.Cal.Atty.Gen., *supra*, 12.) Under the provisions of section 43016, civil penalties not to exceed $500 per vehicle may be imposed by the Board for a violation of section 43845, with the penalties deposited in a state fund "available to the state board to carry out its duties and functions" (§ 43015). In addition, the Board may seek injunctive relief in enforcing the requirements of section 43845. Section 43017 states:

"The state board may enjoin any violation of any provision of this part, or of any order, rule, or regulation of the state board, in a civil action brought in the name of the people of the State of California, except that the state board shall not be required to allege facts necessary to show, or tending to show, lack of adequate remedy at law or to show, or tending to show, irreparable damage or loss."

Neither section 49454 nor section 40929 precludes the Board from administering a statutory mandate such as contained in section 43845. The Board is not the "south coast district" (§ 40454, subd. (a)), and the parking subsidy equivalency program is required by the Legislature (§ 43845) rather than by the Board for purposes of section 40929, subdivision (a).

Administrative agencies have only the powers which are conferred upon them by statute, and an act in excess of those powers is void. (*Ferdig* v. *State Personnel Board* (1969) 71 Cal.2d 96, 103-104; *Rich Vision Centers, Inc.* v. *Board of Medical Examiners* (1983) 144 Cal.App. 3d 110, 114.) Of course, an agency's powers are not limited to those expressly granted in the legislation; rather, it is well settled that administrative officials "may exercise such additional powers as are necessary for the due and efficient administration of powers expressly granted by statute, or as may fairly be implied from the statute granting the powers." (*Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 810; see also *Stackler* v. *Department of Motor Vehicles* (1980) 105 Cal.App.3d 240, 245.) Here the districts have no express powers with respect to the administration or enforcement of the parking subsidy equivalency program required by section 43845. Any implied powers in that regard belong to the Board, not the districts.

We therefore conclude that the Board, and not the districts, has the responsibility for enforcing the parking subsidy equivalency program of section 43845.

* * * * *