[Civ. No. 40857. First Dist., Div. Two. July 27, 1978.]

GILLETT-HARRIS-DURANCEAU & ASSOCIATES, INC.,
Plaintiff and Appellant, v.
ROBERT C. KEMPLE et al., Defendants and Respondents.

COUNSEL

Littlejohn & Westfall, Donald W. Littlejohn, Gerald W. Nash and Crump, Bruchler & Crump for Plaintiff and Appellant.

Spridgen, Barrett, Achor, Luckhardt, Anderson & James, William G. Luckhardt and Harry A. Allen for Defendants and Respondents.

OPINION

ROUSE, J.—Plaintiff, Gillett-Harris-Duranceau & Associates, Inc., appeals from a judgment of dismissal entered after a demurrer to its second amended complaint was sustained without leave to amend.

Plaintiff's second amended complaint named, as defendants, 19 individuals who served on the Lake County Grand Jury during the fiscal year 1974-1975. It was alleged therein that plaintiff was a firm which provided engineering, land surveying and architectural services, and that in 1970, it began contracting to furnish such services to the County of Lake and to certain special districts within said county. Plaintiff alleged that on August 8, 1975, defendants had filed a public report entitled "Final Report of the Grand Jury—1975," with the Lake County Clerk, and that said report contained the statement that plaintiff had been negligent, incompetent and wrong in the performance of its duties. Allegedly, such statement was untrue, was known by defendants to be untrue, was made with the intent to convey defamatory meaning, and did, in fact, bring plaintiff into public disgrace and disrepute and injure plaintiff in its profession. Plaintiff's complaint alleged that the grand jury had returned no indictment against plaintiff or any of its employees or agents or against any elected or appointed officers of the County of Lake. Plaintiff sought to recover compensatory damages for defamation and interference with prospective business advantage. Exemplary damages were also sought on the theory that defendants had acted maliciously in making the defamatory statement concerning plaintiff.

In sustaining the demurrer without leave to amend, the trial court concluded that a grand jury was a judicial body which was entitled to be as fully protected in the exercise of its powers and functions as the courts themselves and that, like the courts, the grand jury was therefore entitled

to full immunity from liability based upon statements made in the performance of its duties. The court further concluded that to the extent that section 930 of the Penal Code constituted an attempt to remove civil immunity from the grand jury's functions, such statute was an unconstitutional invasion of judicial prerogatives.

Plaintiff's appeal presents two issues: (1) whether section 930 of the Penal Code is applicable in this instance, and (2) whether said statute, if applicable, is constitutional.

Section 930 of the Penal Code[1] is based upon former section 928, as amended in 1897. That statute specified the affairs of county government upon which the grand jury was required to make its annual report, and included the following caveat: "*provided,* that if any grand jury shall, in the report above mentioned, comment upon any person or official who has not been indicted by the said grand jury, the said comments shall not be deemed to be privileged." (Stats. 1897, ch. 142, § 2, p. 205.)

Former section 928 was later amended, on various occasions,[2] until 1959, when it was repealed and its provisions were reenacted as seven separate statutes, namely, sections 925 through 931. (Stats. 1959, ch. 501, art. 2, pp. 2449-2450.) Sections 925 and 926 were based upon the first paragraph of former section 928, sections 927 and 928 upon the second paragraph of said statute, section 929 upon the third paragraph, section 930 upon the fourth paragraph, and section 931 upon the fifth paragraph.

---

[1]Unless otherwise specified, all subsequent statutory references are to the Penal Code.

[2]In 1957, that section read as follows: "It shall be the duty of the grand jury annually to make a careful and complete examination of the books, records and accounts of all the officers of the county, of all hospital districts which were organized in the county, and especially those pertaining to the revenue, and report as to the facts they have found, with such recommendations as they may deem proper and fit; and if, in their judgment, the services of an expert are necessary, they shall have power to employ one, at an agreed compensation, to be first approved by the court; and if, in their judgment, the services of assistants to such expert are required, they shall have power to employ such, at a compensation to be agreed upon and approved by the court.

"It shall be the duty of every grand jury first impaneled in even-numbered years to investigate, upon request to grant personal interviews to the officials concerned, and to report upon the needs for increase or decrease in salaries of the county supervisors, the district attorney and the auditor, and it shall cause a copy of such report to be transmitted to each Member of the Legislature representing the county in which it has been impaneled before the commencement of the regular session of the Legislature in odd-numbered years. It shall also be the duty of every grand jury to investigate and report upon the needs of all county officers in its county, including the abolition or creation of

In 1961, the Legislature enacted a new statute, section 933.5, which authorized the grand jury to examine the books and records of any special-purpose assessing or taxing district located wholly or partly in the county. (Stats. 1961, ch. 1461, § 2, p. 3313.) The statute was amended in 1969 to add language to the effect that the grand jury could investigate and report upon the method or system of performing the duties of such districts. (Stats. 1969, ch. 931, § 1, p. 1870.)

At the time of the grand jury report here in issue, section 930 read as follows: "If any grand jury shall, *in the report above mentioned,* comment upon any person or official who has not been indicted by such grand jury such comments shall not be deemed to be privileged." (Italics added.)

Section 930 was immediately preceded by section 929,[3] which provided that "When making an examination of the books, records, and accounts of all the officers of the county and when investigating and reporting upon the needs of all county officers in its county, the grand jury shall include an examination and report upon all the books, records, and accounts of all the officers of such county which are kept in their ex officio capacity, as incumbents or officers of any special legislative district or other district in the county, created pursuant to state law."

The alleged defamatory statement upon which the action is based was contained in a report rendered by the "Special Districts Committee" of

offices and the equipment for, or the method or system of performing the duties of, the several offices, and it shall cause a copy of such report to be transmitted to each member of the board of supervisors in its county.

"It shall be the duty of the grand jury, when making an examination of the books, records, and accounts of all the officers of the county and when investigating and reporting upon the needs of all county officers in its county, to include an examination and report upon all the books, records, and accounts of all the officers of such county which are kept in their ex officio capacity, as incumbents or officers of any special legislative district or other district created by or under the laws of the State of California, in their respective counties.

"The judge, on impanelment of the grand jury, shall charge them especially as to their duties under this section; provided, that if any grand jury shall, in the report above mentioned, comment upon any person or official who has not been indicted by the said grand jury the said comments shall not be deemed to be privileged.

"Any and all expenses incurred under this section, and also the per diem and mileage where allowed by law, of the grand jurors, shall be paid by the treasurer of the county out of the general fund of said county upon warrants drawn by the county auditor upon the written order of the judge of the superior court in said county." (Stats. 1957, ch. 1364, § 1, p. 2699.)

[3]Section 929.1, which dealt with the employment by the grand jury of expert auditors or appraisers to assist in the examination of the county assessor's records, was repealed in 1974. (Stats. 1974, ch. 1396, § 2, p. 3054.)

the grand jury. Defendants point out that, when the provision eliminating the grand jury's privilege was originally added to former section 928 in 1897, that statute dealt solely with the examination of the books, records and accounts of county officers and made no mention of special-purpose assessing or taxing districts. They assert that the Legislature could not have had special districts in mind when it originally added the provision eliminating the grand jury's privilege, since it was not until the 1961 enactment of section 933.5 that the grand jury was authorized to examine the books and records of such special districts. In 1975, when the grand jury rendered the report here in issue, section 930 provided that there should be no privilege in connection with "the report above mentioned." Reports on special districts are not mentioned in any of the statutes preceding section 930, but only in the subsequent statute, section 933.5. According to defendants, it follows that a special district report cannot be deemed "the report above mentioned," within the meaning of section 930. They contend that the statute was intended to eliminate immunity on the part of the grand jury only in connection with the previously mentioned reports on county officers.

Plaintiff asserts that there is no logical reason why the Legislature would have intended that a grand jury report on county officers not be privileged, while a report on special districts would be privileged. They point out that, as a matter of practice, grand juries do not separate special districts reports from reports on county officials; rather, that the normal practice, which was followed in this case, is to render a single report dealing with both subjects. Plaintiff argues that since the Legislature has imposed no requirement that grand juries separate special district reports from reports on county officers, it may be presumed that the Legislature approved of the preparation of a single report and that the reference to "the report above mentioned" in section 930 should be interpreted as referring to a report by the grand jury on the subject of special districts as well as county officers.

■ Juridical construction of a statute is possible only when uncertainty is found. "Clear statutory language no more needs to be interpreted than pure water needs to be strained." (*Holder* v. *Superior Court* (1969) 269 Cal.App.2d 314, 317 [74 Cal.Rptr. 853].) A court may not rewrite a statute by inserting thoughts that have been omitted or by omitting thoughts that have been inserted. (*Richardson* v. *City of San Diego* (1961) 193 Cal.App.2d 648, 650 [14 Cal.Rptr. 494].) Where the words of a statute are clear, the courts cannot add to them or alter them or insert qualifying

provisions to conform to an assumed intent or accomplish a purpose that does not appear on the face of the statute or from its legislative history. (*Rowan* v. *City etc. of San Francisco* (1966) 244 Cal.App.2d 308, 314 [53 Cal.Rptr. 88].)

On the other hand, there is abundant authority for the proposition that the literal construction of a statute will not prevail if it is opposed to legislative objective. (*Pacific Gas & Elec. Co.* v. *Morse* (1970) 6 Cal.App.3d 707, 712 [86 Cal.Rptr. 7].) The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law, and every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect. (*Cannon* v. *American Hydrocarbon Corp.* (1970) 4 Cal.App.3d 639, 648 [84 Cal.Rptr. 575].) Words will not be given their literal meaning when to do so would make the provisions of a statute apply to transactions never contemplated by the Legislature, and to this end, the intent of a law must be held to prevail over the letter. (*LaBorde* v. *McKesson & Robbins, Inc.* (1968) 264 Cal.App.2d 363, 370 [70 Cal.Rptr. 726].)

Here, the language of section 930 renders it applicable only to "the report above mentioned." The statutes preceding section 930 make no mention of reports concerning special districts; they refer only to reports on county officers. We agree, however, with plaintiff's assertion that it is difficult to conceive of any valid legislative objective which would be furthered by eliminating the grand jury's privilege in connection with reports concerning county officers while preserving such privilege as to reports which concern special districts within the county. We conclude that the provisions of section 930 apply both to grand jury reports on county officers and reports on special districts.

The question remaining is whether the provisions of section 930 constitute an unconstitutional impairment of the judicial privilege. Defendants remind us that article III, section 3, of the California Constitution divides the state government into legislative, executive and judicial departments, and that it has long been settled that the Legislature cannot exercise or place limitations upon judicial powers. Thus, in *Oppenheimer* v. *Ashburn* (1959) 173 Cal.App.2d 624 [343 P.2d 931], the appellate court held invalid a section of the Penal Code which provided for the imposition of a fine upon a judge who refused to grant a writ of habeas corpus after a proper application therefor had been made. In so holding, the court observed that the decisions of this state uniformly and

consistently grant immunity to judges in the exercise of their judicial functions. The court then referred to an early California case which applied such rule to grand jurors, pointing out that "The clear line of California decisions begins with the early case of *Turpen* v. *Booth* (1880), 56 Cal. 65 [38 Am.Rep. 48], which held that since a grand juror served in a quasi-judicial status he was not civilly responsible, no matter how erroneous his findings or how malicious his motive, for his action on the grand jury." (P. 629.)

Defendants also rely upon section 47, subdivision 2, of the Civil Code, which provides that a privileged publication or broadcast is one made in any judicial proceeding. They note that in *Irwin* v. *Murphy* (1933) 129 Cal.App. 713 [19 P.2d 292], it was held that a grand jury is a judicial body and grand jurors are officers of the court (p. 716), and that statements impugning the integrity of the plaintiff as a boxing referee were privileged where pertinent to the matters or persons under investigation (p. 718).

Plaintiff points out that the only reference to the grand jury in the California Constitution concerns the indicting function of that body and provides for the annual summoning of grand jurors. (Cal. Const., art. I, §§ 14, 23.)

In *Fitts* v. *Superior Court* (1936) 6 Cal.2d 230, 241 [57 P.2d 510], the California Supreme Court held that, by failing to make any further provision regarding the grand jury, the constitutional convention of 1879 left to the Legislature all questions affecting the grand jury not expressly covered by the Constitution.

Thus, as plaintiff suggests, an important distinction must be made between a grand jury's authority to indict and its authority to exercise a "watchdog" function in matters of local government. The latter activity is a unique creature of the California Legislature, which has a long and well respected heritage. .(*People* v. *Superior Court (1973 Grand Jury)* (1975) 13 Cal.3d 430, 436 [119 Cal.Rptr. 193, 531 P.2d 761].) Since the grand jury's power to investigate and report on matters pertaining to local government is a creature of statute, the Legislature is at liberty to impose reasonable limitations upon the exercise of this watchdog function. Section 930 imposes such a limitation.

The cases relied upon by defendants, namely, *Turpen* v. *Booth, supra,* 56 Cal. 65, and *Irwin* v. *Murphy, supra,* 129 Cal.App. 713, are readily

distinguishable from the situation before us. Each of those cases upheld a claim of privilege in connection with statements made by grand juries as a part of investigations which were conducted in order to determine whether their constitutional authority to indict should be exercised. Also, we believe that defendants' reliance upon section 47, subdivision 2, of the Civil Code, is misplaced. ■ It is well settled that a special statute dealing expressly with a particular subject controls and takes precedence over a general statute covering the same subject. (*In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593]; *Burum* v. *State Compensation Ins. Fund* (1947) 30 Cal.2d 575, 586 [184 P.2d 505].) Therefore, where the Legislature has enacted a statute which exempts statements made in certain reports rendered by the grand jury from the status of privileged communications, that statute takes precedence over another statute which deals generally with the subject of privilege in judicial proceedings.

■ Defendants have not established, nor have we been able to discern, any conflict between the provisions of section 930 and those of our state Constitution which deal with grand juries. The simple truth is that the latter document does not deal with the grand jury's authority to act as a watchdog and prepare reports on local government. Since the watchdog function of the grand jury was created by statute, there is no reason why its exercise cannot be limited by statute.

■ We agree with plaintiff that the grand jury's function of investigating and reporting on local government is not inherently a part of the judicial system. Further, we find merit in plaintiff's contention that there is sufficient basis for distinguishing the grand jury's watchdog role from its role as an indicting body: indictment proceedings are secret and their disclosure is a misdemeanor (§ 924.1); the sufficiency of the evidence presented to the grand jury may be challenged pursuant to section 995; the accused, if indicted, is afforded a public trial and the opportunity to defend against the charges. By contrast, when the grand jury renders its watchdog report, the trial court's power to review such report is limited: it may refuse to file an illegal report which is beyond the grand jury's jurisdiction to render. (*People* v. *Superior Court (1973 Grand Jury), supra,* 13 Cal.3d at p. 440.) There is no statutory provision similar to section 995 for challenging the sufficiency of the evidence; there are no rules of evidence controlling the type of information which can be presented to the grand jury for its report; and there is no forum in which an individual who has been unfavorably mentioned by the grand jury may present his version of the facts. In our opinion, these considerations furnish ample justification for the Legislature's decision to enact section 930 and thereby

eliminate the claim of privilege in connection with the grand jury's report on local government.[4] We conclude that, in so doing, the Legislature acted well within its power and that the restrictions thus imposed do not violate the California Constitution.

The judgment of dismissal is reversed.

Taylor, P. J., and Kane, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied October 12, 1978.

---

[4]It is of interest to note that when the grand jurors in this case were impaneled and sworn, the court advised them of their lack of immunity in certain instances, stating, "as to any comments in your reports upon a person or public official not indicted, such comments are not privileged and could, if libelous, be the basis for a charge of civil or criminal libel."