TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 87-107 |
| of | : | JULY 30, 1987 |
| JOHN K. VAN DE KAMP<br>Attorney General | : | |
| ANTHONY S. DA VIGO<br>Deputy Attorney General | : | |

_____

THE HONORABLE IRA REINER, DISTRICT ATTORNEY, COUNTY OF LOS ANGELES, has requested an opinion on the following question:

What is the meaning of "law enforcement personnel" and "ongoing criminal investigation" as those terms are used in Health and Safety Code section 25180.7?

CONCLUSION

"Law Enforcement personnel" refers to those employed by public agencies to enforce the criminal law, including investigation, arrest, and prosecution. "Ongoing criminal investigation" refers to the detection and prosecution of criminal conduct, which is actually in progress throughout or during some portion of the prescribed 72-hour period.

1

On November 4, 1986, the voters of California approved the Safe Drinking Water and Toxic Enforcement Act of 1986. This initiative measure, Proposition 65, amended and added related sections to the Health and Safety Code. Section 1 of the initiative contains the following declaration of purpose:

"The people of California find that hazardous chemicals pose a serious potential threat to their health and well-being, that state government agencies have failed to provide them with adequate protection, and that these failures have been serious enough to lead to investigations by federal agencies of the administration of California's toxic protection programs. The people therefore declare their rights:

"(a) To protect themselves and the water they drink against chemicals that cause cancer, birth defects, or other reproductive harm.

"(b) To be informed about exposures to chemicals that cause cancer, birth defects, or other reproductive harm.

"(c) *To secure strict enforcement of the laws* controlling hazardous chemicals and deter actions that threaten public health and safety.

"(d) To shift the cost of hazardous waste cleanups more onto offenders and less onto law-abiding taxpayers.

The people hereby enact the provisions of this initiative in furtherance of these rights." (Emphasis added.)

Among the added statutory provisions is section 25180.7. Subdivision (b) thereof provides as follows:

"Any designated government employee who obtains information in the course of his official duties revealing the illegal discharge or threatened illegal discharge of a hazardous waste within the geographical area of his jurisdiction and who knows that such discharge or threatened discharge is likely to cause substantial injury to the public health or safety must, within seventy-two hours, disclose such information to the local Board of Supervisors and to the local health officer. *No disclosure of information is required* under this subdivision when otherwise prohibited by law, or *when law enforcement personnel have determined that such disclosure would*

2

*adversely affect an ongoing criminal investigation*, or when the information is already general public knowledge within the locality affected by the discharge or threatened discharge." (Emphasis added.)

Under the provisions of subdivision (b), no disclosure by a government employee of information concerning the actual or threatened discharge of hazardous waste is required "when law enforcement personnel have determined that such disclosure would adversely affect an ongoing criminal investigation." The present inquiry concerns the significance of the terms "law enforcement personnel" and "ongoing criminal investigation" which are not otherwise defined.

The principal rules of statutory interpretation were summarized in *Evans* v. *City of Anaheim* (1982) 133 Cal.App.3d 853, 856:

"We begin with the fundamental rule that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent the court turns first to the words themselves for the answer. We are required to give effect to statutes according to the usual, ordinary import of the language employed in framing them. If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose; a construction making some words surplusage is to be avoided. When used in a statute words must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear. Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (Citations and quotations omitted.)

Further, it has been held that statutory language is reasonably certain if it can be understood with the aid of reference to the dictionary. (*People* v. *Spencer* (1975) 52 Cal.App.3d 563, 565.)

At the inception it may be seen that the provisions under consideration constitute an exception respecting the duty to disclose. Ordinarily, exceptions should be narrowly construed. (*Lacabanne Properties, Inc.* v. *Dept. Alcoholic Bev. Cont.* (1968) 261 Cal.App.2d 181, 189; 70 Ops.Cal.Atty.Gen. 92, 97 (1987).) This rule is a corollary to the rule of liberal construction to promote the legislative objectives. (*Valdez* v. *Federal Mut. Ins. Co.* (1969) 272 Cal.App.2d 223, 227.) In the present situation, however, the exception to the requirement of disclosure promotes the legislative objective of prosecution for unlawful discharge of hazardous waste. (See, subdivision (c) of the declaration of purpose, *supra*, "to secure strict enforcement of the laws controlling

3

hazardous chemicals . . .") While the reference in section 25180.7, subdivision (b), to an "ongoing criminal investigation" is not limited to investigations of crimes respecting environmental pollution, it may be fairly inferred that an investigation which would be adversely affected by a disclosure required under that section would normally involve such a discharge. Since the exception promotes an express statutory objective, the usual rule requiring a narrow construction of exceptions will not be applied.

LAW ENFORCEMENT PERSONNEL

The phrase "law enforcement personnel" occurs in the context of a criminal investigation. Thus, while nearly every public agency is engaged in the administration or enforcement of some statute, we perceive the principal function in question to be limited to the prevention and detection of crime. Indeed, "law enforcement" in its traditional sense refers to the enforcement of penal statutes. (*State of California* ex rel. *Division of Ind. Safety* v. *Superior Court* (1974) 43 Cal.App.3d 778, 784.)

Further, our system of law commits law enforcement to duly authorized public officers. While a private person may investigate crime and effect a citizen's arrest under limited circumstances (see Pen. Code, § 837), the words "law enforcement personnel" in the present context were intended, in our view, to refer only to those who are employed by public agencies in positions involving the enforcement of the criminal law. In this regard, the word "personnel" connotes a body of persons employed in a particular professional or occupational service. (Cf. Webster's Third New Internat. Dict. (1961) p. 1687.)

The word "enforcement" is defined in part as "the compelling of the fulfillment (as of a law or order)." (Webster's, *supra*, at 751.) Enforcement of the criminal law would encompass the investigation of crime, and the arrest and prosecution of those suspected of crime. Consequently, law enforcement personnel would include "peace officers" as defined in chapter 4.5, title 3, part 2 (commencing with § 830) of the Penal Code. The term would also extend to public prosecutors, including the Attorney General, district attorneys, and city attorneys having prosecutorial duties, as well as their investigators. It is concluded that "law enforcement personnel" refers to those employed by public agencies to enforce the criminal law, including investigation, arrest, and prosecution.

ONGOING CRIMINAL INVESTIGATION

An "investigation" is appropriately described as "a detailed examination . . . a searching inquiry . . . an official probe . . . ." (Webster's, *supra*, at 1189.) A criminal investigation would embrace the detection and gathering of facts and evidence in

4

preparation for, and would include the prosecution of crime. An activity is "ongoing" if it is actually in progress or continuously moving forward. (Webster's, *supra*, at 1576.)

Nothing in Health and Safety Code section 25180.7 or in the ballot pamphlet which accompanied its submission to the electorate suggests that the term "criminal investigation" is limited to the investigation of crimes relating to environmental pollution or to any other category of criminal conduct. Where the words of a statute are clear, we neither add to them, alter them, nor insert qualifying provisions to conform to an assumed intent or accomplish a purpose that does not appear on the face of the statute or from its legislative history. (*Gillett-Harris- Duranceau & Associates, Inc.* v. *Kemple* (1978) 83 Cal.App.3d 214, 219; 66 Ops.Cal.Atty.Gen. 217, 222 (1983).) Hence, an ongoing criminal investigation would include an investigation of any criminal conduct, which is actually in progress or continuously moving forward.

Health and Safety Code section 25180.7, subdivision (b), provides that a designated government employee has a duty to disclose certain information within a prescribed period of 72 hours. A breach of that duty cannot occur until the lapse of the period. Consequently, if a criminal investigation is in progress prior to the lapse of the period, it may provide the basis for a determination which would preclude the duty to disclose. Of course, the determination itself must also precede ("when law enforcement personnel *have determined*") the lapse. Thus, the ongoing investigation need not have preexisted the date on which the information was obtained or the requisite knowledge as to its probable injurious effects acquired, but may, for instance, have been precipitated by the discovery. This interpretation is consistent with the apparent policy of preserving the integrity of confidential criminal investigations. In this regard, it would not appear significant, in terms of the potential adverse impact of a disclosure, when an investigation was first initiated.

Once the determination has been made, the duty ceases. Nothing in the statute suggests its revival, even though the investigation is closed or the determination is rescinded prior to the lapse of the period. The statute contains no provision for communication of any such determination or rescission to the designated government employee, nor does it cast a burden of discovering any such rescission upon such employee. Inasmuch as a violation of this rule gives rise to criminal liability (Health & Saf. Code, § 25180.7, subd. (c)), the rule applies that penal statutes will not be given application beyond their plain intent, so as to include offenses not coming clearly within the import of their language. (*People* v. *Carskaddon* (1957) 49 Cal.2d 423, 427; and see *People* v. *Bradley* (1983) 146 Cal.App.3d 721, 725; 20 Ops.Cal.Atty.Gen. 16, 17 (1952).) Of course, the employee's awareness of a new or continued discharge may give rise to a new duty.

5

It must be emphasized, finally, that the determination both as to the existence of an ongoing criminal investigation and as to the adverse effect thereon of a disclosure, must be made by law enforcement personnel. Hence, such matters fall within the considered judgment of such personnel. Of paramount concern to the designated government employee is the ultimate fact that a determination has or has not been made. If it has not, the duty remains. If it has, disclosure is neither required nor prohibited.

It is concluded that an ongoing criminal investigation is an investigation which has been determined by law enforcement personnel to be in progress, regardless of the time of its commencement, but prior to the lapse of the prescribed period.

*****

00-1203