Filed 1/10/17

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (El Dorado)

----

|  |  |
|---|---|
| THE PEOPLE ex rel. VERN PIERSON, as District Attorney, etc., | C081603 |
| Petitioner, | (Super. Ct. No. P16CRF0064) |
| v. | |
| THE SUPERIOR COURT OF EL DORADO COUNTY, | |
| Respondent; | |
| SOUTH LAKE TAHOE POLICE OFFICERS' ASSOCIATION et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDING in mandate. Petition for writ of mandate granted. James R. Wagoner, Judge.

Vern Pierson, District Attorney (El Dorado), William M. Clark, Chief Assistant District Attorney, Patrick O'Toole and Jerry Coleman, District Attorneys, for Petitioner.

1

Michael A. Hestrin, District Attorney (Riverside); Anne Marie Schubert, District Attorney (Sacramento); Gregory D. Totten, District Attorney (Ventura), Michael D. Schwartz, Assistant District Attorney; Jeff W. Reisig, District Attorney (Yolo), Ryan J. Couzens, Deputy District Attorney; California District Attorneys Association and Mark L. Zahner, as Amici Curiae for Petitioner.

No appearance for Respondent Superior Court.

Mastagni Holstedt, Judith A. Odbert, Joshua A. Olander and Tashayla D. Billington for Real Parties in Interest South Lake Tahoe Police Officers' Association and South Lake Tahoe Police Supervisors' Association.

Ferguson, Praet & Sherman, Bruce D. Praet and Thomas T. Watson for Real Parties in Interest City of South Lake Tahoe and Chief of Police Brian Uhler.

It is self-evident that the public has an interest in the investigation of a peace officer's use of lethal force.  In furtherance of that interest, the Legislature in 2015 amended Penal Code section 917[1] to "prohibit a grand jury from inquiring into an offense . . . that involves a . . . use of [lethal] force by a peace officer" for the purpose of returning an indictment (see § 917, subd. (b)), or in returning an accusation under section 919 (which is not at issue in this appeal; § 919, subd. (c)).  (Legis. Counsel's Dig., Sen. Bill No. 227 (2015-2016 Reg. Sess.) Stats. 2015, ch. 175, §§ 1, 2.)  In stating the need for these amendments, the author of the legislation noted that "the outcome of the criminal grand jury proceedings can seem unfair or inexplicable" to the general public because "[t]he criminal grand jury system lacks transparency" and "[t]ransparency and accountability are key to establishing and keeping the [public trust]."  (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 227 (2015-2016 Reg. Sess.) as amended Apr. 21,

---

[1] Undesignated statutory references are to the current Penal Code unless otherwise indicated.

2015, p. 3.)[2]  (We note that this analysis does not identify any specific abuses of the indictment process in California and therefore section 917 does not need to be interpreted in light of the facts of any particular incident.)

The District Attorney of El Dorado County (the District Attorney) convened a criminal grand jury and issued subpoenas to witnesses in connection with a peace officer's 2015 fatal shooting of a suspect, deliberately waiting until 2016 in order to challenge this legislative action.  On the motions of the real parties in interest, the superior court issued orders quashing the District Attorney's subpoenas and dismissing the criminal grand jury.  The District Attorney thereafter filed this petition in the name of the People seeking a writ of mandate directing the superior court to overturn its orders. We have granted leave to a number of *amici* to file arguments in support of the petition.[3] We conclude the legislative object, however salutary, cannot be accomplished in this manner; it intrudes on the *constitutional* grant of authority to the criminal grand jury to issue an indictment after inquiry, which taken to its logical conclusion would allow the Legislature by statute to abrogate indictments entirely for all classes of offenses.  The Legislature instead must seek a constitutional amendment to accomplish the same end as section 917, or otherwise act to amend grand jury *procedures* in lethal force cases to achieve its objective of greater "transparency" and accountability.

## FACTUAL AND PROCEDURAL BACKGROUND

This is, in essence, an action for a declaratory judgment of the constitutionality on its face of section 917.  The facts underlying the fatal incident are therefore largely

---

[2]  We take judicial notice of this statement of legislative purpose on our own motion, the District Attorney having failed to file a separate motion to this effect for the legislative materials he attached to his petition.  (Cal. Rules of Court, rule 8.252(a)(1), (2).)

[3]  These include the District Attorneys of Riverside, Sacramento, Ventura, and Yolo counties, and the California District Attorneys Association.

3

irrelevant; indeed, while the parties advert to them in their briefing, they do not provide us with any citation to a supporting source in the record, and the only exhibit apparently describing these underlying facts is the recitation of facts in the District Attorney's opposition brief on the motions to quash. However, as the parties appear to treat these as undisputed, we will accept them as true. (*Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 175, fn. 3.)

In June 2015, officers of South Lake Tahoe Police Department responded in the early morning around 2:50 a.m. to reports of suspected domestic violence at a motel. As one officer knocked on the door of the room, the other circled around back. This officer saw a man wearing only shorts climbing out of the bathroom window. He shot the man in the chest, inflicting a fatal wound. The decedent was in fact unarmed.

There is apparently a voluntary statement to investigators, in which the officer said he had recognized the decedent, a gang member whom the officer had recently arrested for transacting in controlled substances; a person involved in the transaction was armed with a loaded gun. The officer thought the decedent was looking at him menacingly. The officer ordered the decedent to show his hands. As the decedent brought his right hand into view, the officer thought he saw the decedent holding a firearm, so the officer fired his gun once, hitting the decedent in the chest. It is not clear whether or not the officer gave a verbal warning before firing his gun. There may be a toxicology report showing that the decedent was under the influence of alcohol and cocaine at the time of the shooting.

With respect to the *pertinent* procedural background, the District Attorney had not filed any charges as of December 2015. At that time, he informed counsel for real parties in interest South Lake Tahoe Police Officers' Association and Police Supervisors' Association that he intended to wait until after the effective date of amended section 917

4

(Jan. 1, 2016) to convene a criminal grand jury and subpoena the officer and other witnesses in order to test the constitutionality of the statute.

Pursuant to the District Attorney's request, the superior court convened a criminal grand jury, summoning jurors on January 15, 2016 (all further date references are to the year 2016). On February 1, the District Attorney issued subpoenas to real party in interest Chief of Police Brian Uhler, the two officers involved in the incident, a detective, and two supervisory officers, for grand jury sessions scheduled to begin on March 1. On behalf of their members, South Lake Tahoe Police Officers' Association and Police Supervisors' Association filed motions to quash the subpoenas and dismiss the grand jury, in which real party in interest City of South Lake Tahoe (the City) joined on behalf of the Chief. The court granted the motions to quash and to dismiss in light of section 917, declining to find the legislation unconstitutional.

The District Attorney sought relief in this court. We issued an order to show cause, to which the various real parties have filed responses.

**DISCUSSION**

It is said that we presume the constitutionality of a legislative enactment (*Property Reserve, Inc. v. Superior Court* (2016) 1 Cal.5th 151, 192); this is but a shorthand for placing the burden on a challenger to establish affirmatively that it is not. We accord deference in our ultimately de novo review *only* where the enactment of a statute incorporates a "considered legislative judgment" of its constitutionality. (*Id.* at p. 193.) Without belaboring the point, the author's analysis to which we alluded above, and the remainder of the materials in the legislative history available from the Legislative Counsel's Web site (included as exhibits in the petition), do not reflect any consideration of the constitutionality of the action the Legislature wished to take in abolishing the grand jury's constitutional indictment power, although there is a concern expressed for preserving the statutory power to "investigate" under section 918 (which we explain at

5

length below).[4]  We thus address the issue with respect for the goal of our collateral branch of government but with a completely independent viewpoint.

The Declaration of Rights of our state's original Constitution, in echo of the Fifth Amendment to the federal Constitution,[5] provided that " 'No person shall be held to answer for a capital or otherwise infamous crime' " (the latter including all felonies and apparently some misdemeanors under common law (*Matter of Application of Westenberg* (1914) 167 Cal. 309, 318-320)) unless " 'on presentment or indictment of a grand jury' " (Cal. Const. of 1849, art. I, § 8).  By way of explanation, a "presentment" (a dead letter of criminal procedure) is a type of pleading that is an informal document presented to a court from a grand jury (*without* the involvement of a prosecutor) representing that there has been the commission of a public offense, based on the knowledge of the grand jury. The Legislature provided a statutory definition in the original acts of criminal procedure, an authorization for grand jurors to declare such knowledge to fellow jurors and "investigate" as an alternative to the process for indictment, and a procedure for acting upon a presentment (Stats. 1849-1850, ch. 119, §§ 228, 234, 241-249, pp. 291-293;

---

[4]  Because we do not find anything relevant in the remaining legislative materials, we decline to take judicial notice of them on our own motion.  (See *People v. Eubanks* (2011) 53 Cal.4th 110, 129, fn. 9.)

[5]  Since the provision for criminal grand juries is included among a declaration of rights rather than any of the provisions establishing the three branches of government, the United States Supreme Court described it as a *constitutional fixture* in its own right that does not belong to any branch and "serv[es] as a kind of buffer or referee between the Government and the people."  (*United States v. Williams* (1992) 504 U.S. 36, 47 [118 L.Ed.2d 352, 365].)  While operating "under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length." (*Ibid.*)  Under state law it is described as a body that is an arm or instrument of the judicial branch at least for purposes of exercising oversight over the civil "watchdog" grand jury to keep it within its proscribed role.  (*McClatchy Newspapers v. Superior Court* (1988) 44 Cal.3d 1162, 1167, 1179 (*McClatchy*); *People v. Superior Court* (*1973 Grand Jury*) (1975) 13 Cal.3d 430, 433-434, 437, 438, 442 (*1973 Grand Jury*).) However, no authority exists for a similar oversight role of a criminal grand jury.

Stats. 1851, ch. 29, §§ 207, 213, 220-228, pp. 234-237), and made these part of the Penal Code enacted in 1872 (see Ann. Pen. Code (Springer 1872 ed.) former §§ 916, 922, 931-937, pp. 210-211, 213-214; hereafter, Annotated Penal Code). However, the Constitution of 1879 omitted any provision for presentments, and thus the Supreme Court described statutory provisions for them in 1895 as lacking any function; ultimately the *definition* and *procedures* in former sections 916 and 931 to 937 were repealed in 1905. (*Fitts v. Superior Court* (1936) 6 Cal.2d 230, 235 (*Fitts*); *In re Grosbois* (1895) 109 Cal. 445, 448-449; Stats. 1905, ch. 531, §§ 1, 5, pp. 693, 695.) Former section 922, however, remained behind for whatever legislative purpose; *Allen v. Payne* (1934) 1 Cal.2d 607, 608 concluded that this provision does not authorize a grand jury to hire an investigator for the "ferreting out of evidence of crime" (a duty instead "imposed upon certain officers[] having the equipment and qualified personnel to perform it"). The Legislature nonetheless retained and renumbered it in a 1959 recodification as present section 918. (Added by Stats. 1959, ch. 501, § 2, p. 2448.) All our leading criminal treatise has to say about section 918 is that "Grand juries seldom exercise the power of independent investigation of criminal offenses." (4 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Introduction to Criminal Procedure, § 40, p. 70.)

We return our attention to the 1849 enactment, by which the citizens of California incorporated the institution of the criminal grand jury as known at common law in the Constitution. (*Daily Journal Corp. v. Superior Court* (1999) 20 Cal.4th 1117, 1130 (*Daily Journal*); *1973 Grand Jury*, *supra*, 13 Cal.3d at p. 440, fn. 11, citing *Fitts*, *supra*, 6 Cal.2d at pp. 240-241 [grand jury in this sense is not a statutory institution]; *M. B. v. Superior Court* (2002) 103 Cal.App.4th 1384, 1389 (*M. B.*) [same]; *Kitts v. Superior Court* (1907) 5 Cal.App. 462, 468 [it is a "body created by the [C]onstitution"] (*Kitts*).) As this provision is not self-executing, the Legislature has plenary power to prescribe all grand jury procedures *consistent with* the Constitution's express provisions. (*Daily*

*Journal*, 20 Cal.4th at pp. 1122, 1125 & fn. 5; *Fitts*, 6 Cal.2d at pp. 234-235; *People v. Bird* (1931) 212 Cal. 632, 637 [in context of informations] (*Bird*).)

In addition to the *constitutional* power to authorize the criminal prosecution of an accused with an indictment, the Legislature from the dawn of this state granted *statutory* power to grand juries for its other two primary functions:  the issuance of formal "accusations" against public officials to remove them from office, and its civil role as "watchdog" over the affairs of local government.  (*McClatchy*, *supra*, 44 Cal.3d at p. 1170; *1973 Grand Jury*, *supra*, 13 Cal.3d at p. 436, fn. 5; *Gillett-Harris-Duranceau & Associates, Inc. v. Kemple* (1978) 83 Cal.App.3d 214, 221-222 [other than constitutional power to indict, grand jury is creature of statute] (*Kemple*); 72 Ops.Cal.Atty.Gen. 128, 129 (1989); see §§ 919, 922, 925 et seq.; former § 928, added by Code Amends. 1880, ch. 109, § 1, p. 43 [expanding watchdog function]; Ann. Pen. Code, *supra*, former §§ 758, 923, pp. 180, 211; Stats. 1851, ch. 29, §§ 70, 214, pp. 219, 236; Stats. 1849-1850, ch. 119, §§ 73, 235, pp. 280, 292.)

To provide context for the changes to be made under the Constitution of 1879, we note the Legislature initially provided for a procedure under which an information (or "complaint" under the 1851 code) was lodged with a magistrate in order to obtain an arrest warrant, after which an accused was then brought before a magistrate for an examination in order to determine if there was sufficient evidence to hold the accused to answer before a grand jury for indictment;[6] "[a] grand jury could initiate a criminal investigation without a prior examination before a magistrate but this was rarely done." (72 Ops.Cal.Atty.Gen., *supra*, at p. 130; *Ex parte Walsh* (1870) 39 Cal. 705, 707; *Kitts*, *supra*, 5 Cal.App. at p. 465; Ann. Pen Code, *supra*, former §§ 806, 813, 863, 872,

---

[6] A presentment culminated in this final step as well, leading to an indictment.  (Stats. 1849-1850, ch. 119, § 240, p. 292; Stats. 1851, ch. 29, § 228, p. 237; Ann. Pen. Code, *supra*, former § 937, p. 214.)

pp. 189-190, 200, 202; Stats. 1851, ch. 29, §§ 101, 106, 151, 164, pp. 223, 228, 230; Stats. 1849-1850, ch. 119, §§ 102, 105, 107, 152, 164, pp. 282-283, 286-287.)

When the Constitution of 1879 was under consideration, "there was a sharp conflict of opinion whether the power should be vested *in the legislature* to adopt either the grand jury system or prosecution by information.  It was finally decided to continue the grand jury system and provide for the alternative method of prosecution by information preceded by an examination and commitment by a magistrate, the *procedure* in either case to be left to legislative control."  (*Bird*, *supra*, 212 Cal. at p. 643, italics added.)  Thus, article I, section 8 of the Constitution of 1879 provided, " 'Offenses heretofore required to be prosecuted by indictment shall be prosecuted by information, after examination and commitment by a magistrate, *or* by indictment, with or without such examination and commitment,[7] *as may be prescribed by law*.' "  (*Bird*, at p. 636, italics added.)

As *Fitts* concluded, the Constitution of 1879 continued the institution of the grand jury without change, and did not give the Legislature any greater power over it beyond its plenary authority over "all questions affecting the grand jury *not expressly covered by the Constitution*."  (*Fitts*, *supra*, 6 Cal.2d at p. 241, italics added; accord, *Kemple*, *supra*, 83 Cal.App.3d at p. 221.)  Similarly, in concluding that "as may be prescribed by law" applied to both indictments and informations, *Bird* held "the legislature should be free to provide procedure *consistent with constitutional requirements* applicable [to] both . . . " (*Bird*, *supra*, 212 Cal. at p. 637, italics added), and thus the whole information procedure

---

**7**  Thus, the Constitution of 1879 did not mandate the previous involvement of a magistrate in the preindictment process.  (*People v. Goldenson* (1888) 76 Cal. 328, 344-345 [lack of preliminary examination "does not apply in cases of indictment" as a basis for objection]; *Kitts*, *supra*, 5 Cal.App. at p. 465 ["system in vogue" before adoption of new constitution no longer applies; indictment by a grand jury "may be found . . . without a preliminary examination of the charge by a magistrate"].)

was within legislative control "subject to the constitutional provision that there must *be* preliminary examination and commitment by a magistrate . . . " (*id*. at p. 643, italics added).

The present provision for grand jury indictment is now found in section 14 of article I of the California Constitution, which reads, in pertinent part, "Felonies shall be prosecuted as provided by law, either by indictment or, after examination and commitment by a magistrate, by information." This language represents a "streamlined" version of former article I, section 8, without substantive change. (*Hawkins v. Superior Court* (1978) 22 Cal.3d 584, 594 & fn. 9.) Thus, with respect to indictments, the Constitution leaves to the Legislature (and the courts) the "task of developing procedures . . . for *implementing* that mode of initiating prosecutions" consistent with other constitutional protections, authorizing *Hawkins* to prescribe an *additional* postindictment requirement for a preliminary hearing to protect a defendant's right to equal protection. (*Hawkins*, at p. 594, italics added.)[8] By contrast, a court cannot *abolish* a grand jury's indictment power on the grounds of equal protection because the Constitution itself provides for it. (*Bowens*, *supra*, 1 Cal.4th at p. 47.)

Most precedent has explored legislative or judicial control over the *statutory* roles of the grand jury. Even at arm's length, courts have authority over a grand jury to stop it from exceeding legislative grants of power in its statutory duties because a grand jury lacks any additional *inherent* power in these roles. (*McClatchy*, *supra*, 44 Cal.3d at pp. 1167, 1179; *1973 Grand Jury*, *supra*, 13 Cal.3d at pp. 433-434, 437, 438, 442.)[9] In

---

[8] The addition of article I, section 14.1 of the California Constitution abrogated this holding. (Adopted by voters, Prop. 115, § 2, eff. June 6, 1990; see *Bowens v. Superior Court* (1991) 1 Cal.4th 36, 39.)

[9] However, this oversight authority is not part of the judiciary's *constitutional* function, and therefore a court lacks inherent power to act contrary to legislative prescriptions for secrecy in grand jury proceedings. (*Daily Journal*, *supra*, 20 Cal.4th at pp. 1130-1131.)

this vein, the grand jury's authority to issue accusations is a matter of statute, thus the Legislature has the power to prescribe the number of grand jurors who must vote in favor of one; as a result, if the Legislature intended to depart from the rule of 12 under the common law (which it had expressly applied to presentments and indictments), it would have done so expressly. (*Fitts*, 6 Cal.2d at pp. 237-240, 242-243.)

In contrast with the authority of the Legislature and the judiciary to circumscribe the actions of a grand jury in its statutory roles, a grand jury maintains its inherent power in exercising its constitutional criminal function at common law (which, as discussed above, the Constitutions of 1849 and 1879 incorporated) to issue subpoenas duces tecum even though the Legislature did not grant this procedural power explicitly (*M. B.*, *supra*, 103 Cal.App.4th at pp. 1388-1389, 1390-1391), perhaps as a matter of oversight in the 1959 recodification of the grand jury statutes. But where a criminal grand jury did *not* have a power at common law, it cannot assert that power absent legislative grant. Thus, since a grand jury at common law did not have the power of detection of crime (as opposed to the statutory grant in present section 918 of the power of investigation), it could not hire an investigator without an express legislative authorization. (See pp. 6-7, *ante*.)

Adverting to the fundamental principle that the Legislature cannot by statute restrict the judicial power that derives from the Constitution (e.g., *Ex parte Wallingford* (1882) 60 Cal. 103),[10] *Kemple* suggested that this limitation would apply as well to statutory limitations on a grand jury's constitutional power, but it ultimately concluded

---

[10] In analogous circumstances, *Mendoza v. State of California* (2007) 149 Cal.App.4th 1034 held that the Legislature could not by *statute* derogate the power granted under the Constitution to voters to choose whether their local board of education should be appointed (by the mayor, in this particular case) or elected, or transfer the constitutional authority over the local school system to any outside entity such as the mayor's office (*id.* at pp. 1039-1040, 1052-1053).

11

that this *constitutional* power was not at issue in the context of a grand jury acting solely in its *statutory* role as civil watchdog (*Kemple*, *supra*, 83 Cal.App.3d at pp. 220-222).[11]

Having now delivered this lecture on grand jury procedure, we must confront the sui generis nature of section 917, the first legislative effort in 167 years to constrict the grand jury's power under the Constitution to exercise its power of indictment (as opposed to the failure in *M. B.* to provide an essential procedure). Under the above authority, we cannot reach a conclusion other than to find that the Legislature does not have the power to enact a statute that limits the constitutional power of a criminal grand jury to indict any adult accused of a criminal offense. To allow the Legislature to restrict this constitutional role in part would be to concede the power to restrict it in its entirety, a position that has never been endorsed in any precedent in the entire history of our jurisprudence, and which was specifically withheld from the Legislature in the enactment of the Constitution of 1879. We therefore must find that the amendments to section 917 are unconstitutional on this basis. As a result, we do not need to consider the District Attorney's alternative argument that section 917 is an unconstitutional limitation on the executive's charging power, or his ill-framed effort to assert a violation of the rights of accused peace officers to equal protection. We also do not need to consider the claim of amicus Ventura County District Attorney that the Legislature's amendment to section 919 in addition has, perhaps unintentionally, eliminated the ability of a grand jury to remove a peace officer from office through an accusation (which, being a matter of a statutory power of the grand jury, is within the legislative purview).

---

[11] Similarly, *People v. Arroyo* (2016) 62 Cal.4th 589, 593, 597 observed that the grand jury did not have "primary" constitutional jurisdiction to indict minors except for such authority granted pursuant to statute or initiative, and thus it was a matter of *legislative* intent whether a prosecutor could indict a minor without the approval of the juvenile court.

Real parties in interest concede that the Legislature "has defined and limited the grand jury's powers" and "remov[ed] jurisdiction." They assert this is permissible because section 14 of article I of the California Constitution authorizes the Legislature to choose between the procedure of indictment or preliminary examination for cases. But as noted above, *Bird* specifically found the history of the Constitution to be to the contrary, withholding from the Legislature the power to make such a choice and explicitly providing for the availability of *both* procedures in *all* criminal cases at the choice of the prosecution. They emphasize the Legislature's plenary power over the workings of the grand jury, but disregard the limitation discussed above that this is exercised *subject to* the express provisions in the Constitution. The fact that a preliminary hearing is still available for cases involving a peace officer's use of fatal force does not cure the violation of eliminating the constitutional power of the grand jury to act in such cases; just as procedures must allow for the existence of a magistrate and preliminary examination, so must procedures allow for the return of an indictment. Alternately, real parties in interest attempt to cast section 917 as involving simply a "procedural" matter within the legislative power. However, the *effect* of this *procedural* change is nonetheless an unconstitutional restriction on the express provision for the grand jury's ability to indict adults. The Legislature cannot do this through a procedural provision any more than it could eliminate our original jurisdiction over habeas corpus.

The fact that such cases are matters of "statewide concern" does not authorize the Legislature to impinge on the power of a constitutional entity.[12] Strictly speaking, it would not appear that the doctrine of separation of powers would apply to a constitutional body outside our triptych form of government, but the concept would be the same. The

---

[12] In this connection, real parties in interest rely on inapposite authority. *County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 287 involves the relationship between the Legislature and subordinate public entities on matters of local control.

Legislature thus cannot act to defeat or materially impair the inherent constitutional power of another entity. (*Steen v. Appellate Division of Superior Court* (2014) 59 Cal.4th 1045, 1053.) Section 917 unconstitutionally limits the grand jury's power to proceed in a class of cases. That this may be a *small* constitutional violation involving a "limited" number of cases does not stop it from being a violation nonetheless.

Finally, real parties in interest point to the grand jury's ability to act under section 918 to "investigate" a peace officer's use of fatal force. Whatever the nature of this residual statute from the presentment era, there are significant practical difficulties with a grand jury that (1) might not even be convened at the time of an officer incident, (2) must act without the assistance of a prosecutor to obtain and examine witnesses, and (3) must act without any investigators in determining the facts. Furthermore, the process does not result in an indictment or any equivalent power to initiate criminal proceedings; as we have noted above, the constitutional power of presentment has been abrogated since 1879, and the statutory procedures by which this results in an indictment have been repealed for over a century, thus the judiciary would be required to fill this void out of whole cloth (and it is questionable whether we could do so under *Daily Journal*). Therefore, this provision is not a cure for the constitutional violation in section 917.

The Legislature is not powerless to remedy the problem it has identified. It may submit a constitutional amendment to the electorate to remove the grand jury's power to indict in cases involving a peace officer's use of lethal force. It could also take the less cumbersome route of simply reforming the procedural rules of secrecy in such cases, which are not themselves constitutionally derived or necessary to the grand jury's functioning, as it did in section 939.1.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its orders quashing the subpoenas and dismissing the grand jury, and instead issue orders

14

denying the motions of the real parties in interest.  The District Attorney of El Dorado County is awarded costs on appeal.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)

(*CERTIFIED FOR PUBLICATION*)


                                                      BUTZ              , Acting P. J.


We concur:


        MAURO          , J.


        MURRAY          , J.