[Crim. No. 4855.   Second Dist., Div. One.   Jan. 13, 1953.]

THE  PEOPLE,  Respondent,  v.  ALEXANDER  AARON
MORRIS, Appellant.

Gladys Towles Root for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Soko-low, Deputy Attorney General, for Respondent.

DRAPEAU, J.—By an information containing twelve counts, defendant was charged with the crimes of forgery and grand theft; also with three prior convictions of felonies for which he had served terms of imprisonment in state prisons.

Defendant pleaded not guilty to the charge; admitted the priors, waived a jury trial, and submitted his case in part on the transcript of the preliminary hearing, subject to the introduction of further evidence.

The trial court found defendant "not guilty" as to count 12, and found him "guilty" as charged in counts 1 to 11, inclusive. Thereafter, his motion for new trial and his application for probation were denied, and he was sentenced to state prison, the sentences on the several counts to run concurrently with each other and with the unexpired portion of the sentence from which he was on parole.

This appeal is from the order denying the motion for new trial, and from the judgment of conviction of the crime of forgery, as charged in counts 1, 3, 5, 7, 9, and 11, and of the crime of grand theft, as charged in counts 2, 4, 6, 8 and 10 of the information.

It is here contended that the evidence is insufficient to support the judgment, it being particularly urged that there is insufficient corroboration of the testimony of the accomplice Presson.

By means of six checks, appellant and his alleged accomplice Presson abstracted $3,100 from the account of one Saul Sugar in the Bank of America, and $100 from the account of Frank C. Holscher in the same bank.

These two men knew each other in San Quentin. Presson had completed his term of imprisonment, and appellant was on parole when they met in Los Angeles during the summer of 1951.

Mr. Presson was subpoenaed as a witness herein, having previously pleaded guilty to one count of forgery in a prosecution against him. He testified that sometime in August, 1951, he saw appellant who spoke to him about forging some checks. The plan was that appellant should do the writing and Presson should pass the checks. The proceeds were to be split 75 per cent to appellant and 25 per cent to Presson. Presson operated under the name of Clyde E. Thomas. He "bought" general identification, which included a driver's license, a draft card and a social security card bearing that name. All of the checks in question were drawn to the order of Clyde E. Thomas and Presson endorsed that name on the back of each. He identified all six checks at the trial, and testified that he received them from appellant, cashed them at the bank and split the proceeds with appellant.

He also testified that he had a conversation with appellant at the latter's apartment in September, 1951, when they discussed the signature "Saul Sugar." At that time, appellant told him he had seen a man in the bank deposit a lot of money; that when this man made out his deposit slip the writing left an impression on the next sheet which appellant tore off. This witness further testified that he saw appellant write three of the checks in the latter's apartment by using a glass off a picture frame and a cord with a light in it; that he would hold the paper with the impression on it up to the light, look at it a minute and then write. Around September 4th, appellant told Presson that he got the signature of Frank C. Holscher off an ink blotter in the bank.

It was stipulated that Mr. Donn E. Mire, examiner of questioned documents for the Los Angeles Police Department, was qualified to testify as a handwriting expert. He testified that he examined the six checks and also several exemplars of the appellant's handwriting. Among the exemplars were three fingerprint records dated 1945 and 1947. On October 16, 1951, in Room 30 of the city hall, he showed these records to appellant, who acknowledged they were in his handwriting. On that date at the request of Mr. Mire, appellant wrote on five pieces of white paper and on six blank checks. In addition Mr. Mire showed appellant a piece of paper and eleven checks which Mr. Mire first saw in 1947 or 1948, all of which appellant acknowledged were in his handwriting.

Mr. Mire gave as his opinion that the writing on the six checks here under consideration was done by the same person who wrote the various exemplars. Also, that the endorser of the checks was not the person who made the exemplars. The writing was examined minutely by this witness and compared with the exemplars and also with the true signature of Mr. Sugar. He believed that "Saul Sugar," "Clyde E. Thomas" and "Sept." on two of the checks were tracings; also that the person who made the tracings had an exemplar of Mr. Sugar's signature. He also stated that there was close to 50 per cent of dissimilarities in the writings he examined, and that "In some instances as to the signatures there was more than that, because there was no similarity; but in other parts of the check I would say definitely that it was written by the same person who wrote the exemplars." He noticed that appellant was very excited at the time he wrote the exemplars at the city hall; and in comparing the writing therein with that in the fingerprint records made in 1945 and 1947, he "found many various variations in the writing."

Appellant took the stand in his own defense and denied having written the checks or that he had any arrangement with Mr. Presson for uttering them. When asked if he recognized the checks he replied: "Though I haven't seen the checks very closely, I will look at them, though, inasmuch as I think Mr. Donn Mire could verify the fact that I have a certain competency at handwriting myself."

With respect to the insufficency of the corroborating evidence, appellant urges that the testimony of the accomplice is unworthy of belief and that, in analyzing it, two major inconsistencies are evident. One concerns count 12, as to which appellant was found "not guilty." This check was for $100 drawn upon the account of Frank C. Holscher. Police records were introduced to show that Presson was detained in Lincoln Heights Jail at the time he said he passed this check. It was Mr. Mire's opinion that the endorsement of the name Clyde E. Thomas on this check was not written by the endorser of the other checks; that it was better writing.

This witness showed some uncertainty as to places and dates in his testimony. Hence, the court may have believed that he had a lapse of memory as to this particular check but not with respect to the others.

The second inconsistency relates to Presson's statement that "he did not talk to anyone in regard to his testimony other than Mr. Black of the District Attorney's office. Upon ex-

amination, however, by the court, Presson admitted that two police officers who had questioned him in the county jail did talk to him in regard to his testimony against appellant.''

An examination of the record with respect to this point reveals that the witness was confused as to just what was sought from him. ██ And, as said in *People* v. *Thomas*, 103 Cal.App.2d 669, 672 [229 P.2d 836] : "It was the function of the trial court, not this court, to resolve inconsistencies and contradictions. . . . ██ The trier of fact may believe and accept a portion of the testimony of a witness and disbelieve the remainder. ██ On appeal that portion which supports the judgment must be accepted, not that portion which would defeat, or tend to defeat the judgment. . . . ██ A judgment cannot be set aside on appeal unless it clearly appears that on no hypothesis whatever is there sufficient substantial evidence to sustain it.''

██ The testimony of the handwriting expert Mire directly connected appellant through his handwriting to the checks upon which this prosecution was predicated, and sufficiently corroborated the testimony of the witness Presson.

██ As stated in *People* v. *Henderson,* 34 Cal.2d 340, 343, 346 [209 P.2d 785] : "Although the corroborating evidence must raise more than a conjecture or suspicion of guilt, it is sufficient if it connect the defendant with the commission of the crime in such a way as reasonably to satisfy the fact finding body that the accomplice is telling the truth. (*People* v. *Trujillo,* 32 Cal.2d 105, 110, 111 [194 P.2d 681].) ██ The evidence of inculpatory participation need not be direct nor extend to every fact and detail. It may be circumstantial and is sufficient, even though slight, if it tend to connect the defendant with the commission of the crime. (*People* v. *Negra,* 208 Cal. 64, 69, 70 [280 P. 354] ; *People* v. *Yeager,* 194 Cal. 452, 473 [229 P. 40].) . . .

██ "When . . . it is discovered that there is testimony aside from that of the accomplice which tends to connect the defendant with the commission of the crime, the function of the appellate court is performed. Questions of the weight of the evidence and the credibility of the witnesses are for the trial court.''

For the reasons stated, the judgment and the order appealed from are, and each of them is, affirmed.

White, P. J., and Doran, J., concurred.