[Crim. No. 1837.  Fourth Dist.  Nov. 21, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. ISAIAH REED, Defendant and Appellant.

Walter E. Hempstead, Jr., under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendant Ike Reed (whose true name is Isaiah Reed) was found guilty of robbery in the first degree, and he appeals from the judgment of conviction.

The victim of the robbery, Lucy Mae Cunningham, was walking to her home in the City of Brawley at approximately 8:45 p. m. on January 20, 1962, when she heard a noise behind her and felt a rope around her neck. The person behind her took hold of her right arm and started pushing her across the road. Her assailant said that if she screamed she would be killed. He also asked Mrs. Cunningham where she had been and she told him that she had been visiting some friends in their home.

Mrs. Cunningham recognized the voice of her assailant as that of defendant Reed, whom she had known for about two

months. She had seen Reed earlier that day when her husband paid a debt he had owed to Reed. Mrs. Cunningham said, "Ike Reed" aloud and defendant answered, "Yes." She said, "I thought you were a friend of ours" and defendant replied, "Well, you don't know me very well."

Defendant asked Mrs. Cunningham if she had any money and she offered to give him four dollars which she had with her. He told her to give him the money and she did so. During this time, defendant had a cloth over his face and he kept the rope on Mrs. Cunningham's neck.

Defendant then released Mrs. Cunningham and she ran home. Her husband took her to the police station where she showed the rope marks on her neck to Officers Edwards and Santos and told them what had happened.

About 6 a. m. the next morning, Officer Edwards went to defendant's home. While proceeding from the road to defendant's house, the officer noticed the end of a rope protruding from under a boardwalk leading to the front door. The rope was new and not wet or soiled, although it had been misting the night before and the ground where it was found was muddy. Mrs. Cunningham said that this rope was similar to the one which was put around her neck.

Defendant was arrested. He told the officers that he had been released from the Brawley Jail the day before and that he had been in the company of Eugene Minter from the time of his release until about 2 or 3 a. m. the next morning.

Mr. Minter testified that he was with defendant from about 3 :00 p. m. until 8 p. m. on the day of the robbery.

Defendant testified that he was drinking with Minter on the day in question and that he didn't remember what happened between 10 p. m. and 2 a. m. He admitted seeing the Cunninghams during the day, but denied seeing Mrs. Cunningham on the evening of the robbery. He said he had been released from the Brawley Jail on January 19, 1962, after serving a five-day sentence for drunkenness. He admitted a prior conviction for attempted robbery in 1950.

[■■] Defendant contends that the testimony of the prosecution witnesses is not worthy of belief and that the evidence is not sufficient to support the conviction. The record indicates that Mrs. Cunningham testified at the preliminary hearing that her assailant had a "black looking rag" over his face, whereas at the trial she said it was a "light looking cloth." Mr. Minter testified at the preliminary hearing that he saw Jack Benny on television after he returned home on the evening

of the robbery. At the trial, he admitted that he was mistaken because the Jack Benny program was not on television that night.

Neither of these inconsistencies materially impeached the essential evidence of these two witnesses. Mrs. Cunningham identified the voice of her assailant as that of Ike Reed, whom she had known for two months. Mr. Minter said that he was not in defendant's company after 8 p.m., thereby discrediting defendant's claimed alibi. The inconsistencies of these witnesses were not of such a nature as to destroy the credibility of the rest of their testimony as a matter of law. (*People* v. *Thomas,* 103 Cal.App.2d 669, 672 [229 P.2d 836]; *People* v. *Morris,* 115 Cal.App.2d 312, 316 [252 P.2d 36].) ▮▮▮ Our review of the evidence is limited by the rule laid down in *People* v. *Hannon,* 44 Cal.App.2d 484, 489 [112 P.2d 719]:

"Our appellate jurisdiction, however, extends only to questions of law, and where the evidence which militates against a defendant, considered by itself without regard to conflicts in the evidence, is sufficient to support the verdict, the question ceases to be one of law—of which alone this court has jurisdiction—and becomes one of fact upon which the decision of the jury and the trial court is final and conclusive."

Robbery is defined by Penal Code, section 211, as: ". . . the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

Section 211a provides: "All robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon is robbery in the first degree. . . ."

▮▮▮ The evidence in this case satisfies the statutory requirements. (*People* v. *Raleigh,* 128 Cal.App. 105 [16 P.2d 752]; *People* v. *Wood,* 192 Cal.App.2d 393 [13 Cal.Rptr. 339].) Mrs. Cunningham said that she was forced through fear to turn over the four dollars, and that defendant was the person who assaulted her.

▮▮▮ It is urged by defendant that the rope was obtained by an unlawful search and seizure. Admittedly, the officer was on defendant's land when he found the rope, and he went upon the land without a warrant and discovered the rope before defendant's arrest. However, in the case of *Hester* v. *United States,* 265 U.S. 57 [44 S.Ct. 445, 68 L.Ed. 898], it was settled that the Fourth Amendment to the United States Constitution does not protect an open field which the accused may own. Mr. Justice Holmes stated, on page 446,

that: "The distinction between the latter [an open field] and the house is as old as the common law."

In *People* v. *West,* 144 Cal.App.2d 214, 219-220 [300 P.2d 729], it was said: "A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way. While it has been said that ordinarily searching is a function of sight, it is generally held that the mere looking at that which is open to view is not a 'search.'"

Similarly, in *People* v. *Bly,* 191 Cal.App.2d 352, 356 [12 Cal. Rptr. 542], it was held: "[T]he checks wrapped in newspapers found on the front stoop and in the bushes by the back porch, were not obtained by any 'search,' for the mere observation of that which is in open view does not constitute a search."

Here, the officer discovered the rope without any search and the evidence was properly received.

Appellant contends that the district attorney, on cross-examination, improperly asked defendant if he had been convicted of attempted robbery in 1950. Defendant admitted the conviction. There is no merit in this contention. It was proper impeachment to show that defendant had a prior felony conviction and the nature of the offense. (Code Civ. Proc., § 2051; *People* v. *David,* 12 Cal.2d 639, 646 [86 P.2d 811]; *People* v. *Romer,* 218 Cal. 449 [23 P.2d 749].)

Complaint is made that the defense attorney did not properly defend the case during the trial. Our examination of the record indicates that the defense was not inadequate and that defendant's attorney afforded him competent and vigorous representation throughout the trial. There is nothing in the record which shows "such a lack of diligence and competence as to reduce the trial to a 'farce or sham.'" (*People* v. *Wein,* 50 Cal.2d 383, 410 [326 P.2d 457]; *People* v. *Hughes,* 57 Cal.2d 89, 99 [17 Cal.Rptr. 617, 367 P.2d 33].)

It is urged that appellant's constitutional rights were violated because he was not brought to trial by indictment by a grand jury. However, it is well established that, "In the prosecution of criminal cases, information is an alternative remedy. Due process of law does not require grand jury indictment." (*People* v. *Thwaits,* 101 Cal.App.2d 674, 677 [226 P.2d 58].) See also *People* v. *Raffington,* 98 Cal.App.2d 455 [220 P.2d 967]; *Hurtado* v. *State of California,* 110 U.S. 516, 520 [4 S.Ct. 111, 292, 28 L.Ed. 232].

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.