[Crim. No. 12274.   Second Dist., Div. Five.   Mar. 20, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. PHILLIP MANDOLA, Defendant and Appellant.

---

Donald S. Emmer, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—Defendant was found guilty of two counts of receiving stolen property. Probation was denied and he was sentenced to concurrent terms in the state prison. He appeals.

### The Evidence

On the night of November 6, 1965 the Robert Larner Medical Group premises were broken into and among the items found missing the next morning was a check protector. Another burglary took place on the same premises on the night of November 27, 1965. Among the items found missing the next morning was a Monroe calculator.

Sometime thereafter Officer Cron went to an apartment at 280 South Bixel to serve a misdemeanor warrant on defendant Mandola. His knock was answered by Mandola, but when the officer inquired whether anyone by that name lived in the apartment, Mandola said "No," he was just visiting and his name was Hough. Mandola appeared nervous. Asked to produce some writing which would show the name of the person renting the apartment, Mandola then admitted that he was the person named on the warrant. Cron told him he would have to come with him. Mandola put on his shoes. He then said "I will have to get my coat" and stepped toward the officer who was standing next to a closet door. Cron opened the door, but Mandola pointed to a coat which was on a chair. Cron handed him the coat. As they left the apartment Cron noticed a large adding machine on the floor of the closet. He asked Mandola about the machine. Mandola said he had never

seen it before in his life. The officer then opened the closet fully. In addition to the Monroe adding machine he observed a "posting machine" and Thermofax reproducing machine. He then put the defendant under arrest, informed him of his constitutional rights[1] and took him to the police vehicle where he left him with his partner.

Cron then returned to the apartment and conducted a complete search which turned up various other articles not germane to this appeal. At the police station Mandola claimed that he had obtained the articles found in his apartment from a Mexican in a downtown bar for $75. In a later statement he lowered the price to $50.

The apartment where Mandola was arrested had been originally rented to a codefendant—Hough—but Mandola had been seen there on several occasions, having apparently moved in at some point.

Two days after his arrest Mandola was interviewed by Officer Shelburne. He repeated his story about having purchased the articles from a Mexican for $75. He denied having committed any burglaries and said "that the only thing he was guilty of, was receiving stolen property." He said that certain items, among which was the check protector, were stored in the basement of the apartment house in question.

The next day Officer Shelburne visited the apartment house and on request the manager took him to the basement where the check protector was found.

At the trial, where the evidence was submitted on the transcript of the preliminary hearing, objection was made to the introduction of all items seized at the apartment house. The basis for the objection was that they had been obtained as the result of an exploratory search. The objection was sustained as to all items but photographs of a Monroe calculator and the check protector.

█ The only contention on appeal is that the initial "search" of the closet was illegal. We assume that if it had been, the balance of the items discovered would come under the heading of "fruit of the poisonous tree." At the preliminary hearing the question of the officer's motivation in opening the closet was investigated at some length. The key questions and answers were the following: "Q. This misdemeanor warrant that you had, it was for what type offense? A. A traffic violation and failing to appear on the same. Q. Did the

[1]Trial date: February 24, 1966.

defendant ever ask you—did the defendant Mandola ever ask you to get the coat for him? A. No, sir. Q. And yet, you opened up the closet, thinking that there might be a coat inside, is that correct? A. He stated he would have to get his coat. I was standing by the closet door. He stepped towards me, and I just opened the closet door to make sure for no weapons. As I handed him his coat, I checked it to make sure there was no weapons in it.''

It will be recalled that Officer Cron did not take any immediate advantage of the fact that there was an open closet door. It just happened that as he and Mandola left the apartment, he noticed the adding machine in the closet.

In upholding the seizure we can do no better than Judge Auerbach, the magistrate who answered defense counsel's argument at the preliminary hearing as follows:

''The Court: I do not agree with you. Remember, this man came to make an arrest. This gentleman here was every evasive, denied his identity, clearly tried to mislead the officer.

''When the officer was persistent, he finally acquiesced, admitted his identity.

''He apparently was not fully prepared to be arrested, and so he was in the apartment.

''Now, when an officer goes to make an arrest, he doesn't know whom he is dealing with; and he doesn't know what hazards or dangers face him when he comes into an apartment. Especially when he is trying to arrest a man who is determined to conceal his identity and has declined to submit himself to arrest.

''When the officer came into this apartment, he had a perfect right to take every safeguard to protect himself because it is very frequently when you arrest somebody, he wants to go into another room to change his clothes, or put his effects in order; the officer does not know what might be in the other room; he doesn't know whether somebody else might be lurking in some other room, and might constitute a hazard to him.

''He has a right at every stage that he is trying to make an arrest, especially upon a warrant, to protect himself.

''This officer hadn't the faintest notion of what might be in that room, and was not looking around.

''He was trying to effectuate an arrest. This man wanted a coat.

''He is not going to give him a coat or see that this man gets a coat without making sure that there is nothing in that

coat that might serve as an instrument of aggression against him.

"He had a perfect right if the person wanted a coat, and if he wanted to go into a closet, he wanted to open that closet to make sure that he saw where he was going, and what particular item was in that closet that he might be reaching for.

"And if he was reaching for a particular coat or another outer garment, to check that garment before he let him put it on and introduced whatever might be in that coat into the place where he was taking him.

"The officer was not making an exploratory search. He was acting within reason."

Form requires that we add citation of authority in this opinion. In *People* v. *Kraps*, 238 Cal.App.2d 675 [48 Cal. Rptr. 89], the defendant was stopped for routine questioning. Communication with police headquarters revealed that a traffic warrant was outstanding against him. The officer then placed him under arrest and conducted a "feel search." This search uncovered marijuana. After holding that the officers were entitled to arrest defendant on the outstanding warrant, the court answered the argument that the search was "unreasonable in its scope"—having in mind that the arrest was for a traffic offense—as follows: "Defendant urges that the search was unlawful because it lacked a definite purpose and was unreasonable in its scope. Specifically defendant argues that since the arrest was for a traffic offense there was no purpose justifying the search. It is well established that upon lawfully arresting a suspect the police are entitled to conduct a cursory search for weapons. (*Agnello* v. *United States,* 269 U.S. 20, 30 [70 L.Ed. 145, 46 S.Ct. 4, 51 A.L.R. 409]; *People* v. *Stewart, supra,* p. 179 [189 Cal.App.2d 176 (10 Cal.Rptr. 879)]; *People* v. *Strelich,* 189 Cal.App.2d 632, 635 [11 Cal. Rptr. 807]; *People* v. *Reed,* 202 Cal.App.2d 575, 579 [20 Cal. Rptr. 911]; see Pen. Code, §§ 833, 846.) Accordingly, since the search of defendant's person was lawful, the fact that it turned up marijuana instead of weapons did not render the marijuana inadmissible in evidence. Police officers acting properly in the course of their duty in making a search of a person or premises are not required to blind themselves to contraband which is in plain sight simply because it is disconnected with the initial purpose of the search. (*People* v. *Shafer,* 183 Cal.App.2d 127, 128-129 [6 Cal.Rptr. 594]; *People* v. *Roberts,* 47 Cal.2d 374, 379 [303 P.2d 721]; *People* v. *Ortiz,* 147 Cal.App.2d 248, 251-252 [305 P.2d 145]; *People*

v. *Littlejohn,* 148 Cal.App.2d 786, 791 [307 P.2d 425] ; *People* v. *Strelich, supra,* p. 636; *Harris* v. *United States,* 331 U.S. 145, 154-155 [91 L.Ed. 1399, 67 S.Ct. 1898].) Moreover, the fact that the search was not connected with the offense stated in the traffic warrant did not render the seizure of the marijuana illegal. (*People* v. *Strelich, supra,* p. 636; *Harris* v. *United States, supra,* pp. 154-155; *Abel* v. *United States,* 362 U.S. 217, 235-237 [4 L.Ed.2d 668, 80 S.Ct. 683]; and see *People* v. *Stewart, supra,* p. 179.'' (*Ibid.,* pp. 679-680.)

Officer Cron mistakenly but reasonably thought the coat was in the closet. He had every right to make certain the coat contained no weapons. The closet was therefore legally opened. Once it was open, the officer did not have to ignore what was then in plain sight. (*People* v. *Reed,* 210 Cal.App. 2d 80, 84 [26 Cal.Rptr. 428].)

The judgment is affirmed.

Hufstedler, J., and Stephens, J., concurred.