Filed 1/25/2024

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CARLOS CHAVEZ,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF<br>LOS ANGELES COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | B332361<br><br>(Los Angeles County<br>Super. Ct. No. BA452909) |

ORIGINAL PROCEEDINGS in mandate.  Lisa B. Lench, Judge.  Petition denied.

Law Office of Tracy Casadio and Tracy Casadio for Petitioner.

No appearance for Respondent.

George Gascón, District Attorney, Grace Shin, Deputy District Attorney, for Real Party in Interest.

\* \* \* \* \* \*

A grand jury returned an indictment that, among other things, charges a defendant with four violent felonies, and with committing them "for the benefit of, at the direction of, or in association with" a criminal street gang; the latter allegation is known colloquially as the gang enhancement. (Pen. Code, § 186.22, subd. (b)(1)(C).)[1] It is undisputed that the evidence before the grand jury established probable cause to believe the gang enhancement was true *as the enhancement was defined at that time*. However, our Legislature subsequently amended the definition of the gang enhancement—in Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 699, § 4) (Assem. Bill No. 333)—to add new elements. The defendant is now awaiting trial, and has moved to dismiss the gang enhancement allegations because the People had not presented evidence to the grand jury to support the new elements of the enhancement (which did not *exist* at the time of the initial grand jury proceedings). Is dismissal required? It is not. Instead, we hold that a trial court has the inherent authority to reserve ruling on a motion to dismiss, to resubmit gang allegations to the grand jury for the People to present evidence bearing on the new elements, and to thereafter rule on the motion by reviewing the sufficiency of that new evidence. Because the trial court here—in substance, if not

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

form—followed this procedure, we deny the defendant's petition for a writ of mandate.

## FACTS AND PROCEDURAL BACKGROUND

On December 22, 2015, members of the Valerio Street gang drove to Saticoy Street in Van Nuys, California. Saticoy Street is within the gang's territory. Now on foot, three Valerio Street gang members accosted four men perceived to be members of a rival gang, shouted out their gang's name, and the Valerio Street members armed with guns then opened fire. One of the victims died; three others survived.

On May 12, 2017, a grand jury returned a 20-count indictment against nine defendants. With respect to the Saticoy Street shooting, the indictment charges Carlos Chavez (defendant) and five others with one count of murder (§ 187) and three counts of attempted premeditated murder (§§ 664, subd. (a), 187). The indictment further alleges that defendant committed those crimes "for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further or assist in criminal conduct by gang members" pursuant to the gang enhancement statute (§ 186.22, subd. (b)(1)(C)).[2]

On January 1, 2022, Assem. Bill No. 333 became effective. Assem. Bill No. 333 amended the gang enhancement statute to "'essentially add[] new elements.'" (*People v. Tran* (2022) 13 Cal.5th 1169, 1207 (*Tran*).) Prior to the enactment of Assem. Bill

---

[2] The indictment also charges defendant with being a felon in possession of a firearm on a different date and also alleges firearm enhancements in conjunction with the homicide offenses, but that charge and those enhancements are not at issue in this petition.

No. 333, the gang enhancement statute defined a "criminal street gang" as an "ongoing organization" or "group of three or more persons" (1) that "ha[s] as one of its primary activities the commission of one or more [statutorily enumerated] criminal acts"; (2) that "ha[s] a common name or common identifying sign or symbol"; and (3) "whose members individually or collectively engage in, or have engaged in, a pattern of criminal gang activity." (Former § 186.22, subd. (f), Stats. 2017, ch. 561, § 178.) The pre-Assem. Bill No. 333 version went on to define a "pattern of criminal gang activity" as requiring proof of "two or more" convictions for statutorily enumerated offenses as long as they were "committed on separate occasions" and all committed within three years of each other. (*Id.*, subd. (e).) Assem. Bill No. 333 amended the gang enhancement statute to require, for the first time and as pertinent here, proof that the offenses making up the "pattern of criminal gang activity" (1) were committed "collectively" (rather than "individually or collectively") (§ 186.22, subd. (f)); (2) "commonly benefitted [the] criminal street gang," and requiring that the "common benefit [be] more than reputational" (*id.*, subds. (e)(1) & (g)); and (3) were committed within three years of each other *and* within three years of the charged crime, and can no longer include the charged crime (*id.*, subds. (e)(1) & (e)(2)). (Accord, *Mendoza v. Superior Court* (2023) 91 Cal.App.5th 42, 51 (*Mendoza*) [enumerating these changes].)

On August 31, 2023, defendant moved to dismiss the gang enhancement allegations from the indictment. Specifically, defendant argued that Assem. Bill No. 333 applied retroactively to his still-pending case and that the evidence presented to the grand jury did not establish probable cause to believe (1) that the prior offenses constituted a "pattern of criminal gang activity"

4

that were committed collectively to benefit the gang, or (2) that any benefit to the gang was more than reputational.

In their opposition to defendant's motion and at the ensuing hearing, the People conceded that Assem. Bill No. 333's new requirements applied retroactively to the gang enhancements alleged against defendant, and that the evidence presented to the grand jury did not establish probable cause to believe that the prior offenses were committed collectively by Valerio Street gang members or that their benefit to the gang was more than reputational.  However, the People sought the trial court's permission to present additional evidence to the grand jury, representing to the trial court that the People could "meet the requirements of the new[ly amended] gang statute."

The trial court ruled that it would "give the People the opportunity present [evidence relevant to the newly added elements of the gang enhancement statute] to the grand jury if they choose to do so" and "den[ied defendant's] motion [to dismiss] on that basis."  Because the court's order contemplated the presentation of this new evidence to the grand jury, we infer that the court's denial of the motion was without prejudice—and hence equivalent to reserving a ruling on that motion pending resubmission to the grand jury.

Defendant petitioned this court for a writ of mandate, arguing that the trial court lacked the authority to reopen the grand jury proceedings to permit the People to present evidence regarding the elements Assem. Bill No. 333 added to the gang enhancement statute, and that he was entitled to have the gang enhancement allegations dismissed entirely.  We called for a response, and the People submitted a two-page letter indicating they "have not been able to find any cases" directly on point and,

5

on that basis (and hence without any attempt to argue by analogy or engage in further legal research), did "not oppose" defendant's petition.  However, the People did not withdraw their earlier position that they have evidence to present to the grand jury regarding the newly added elements of the gang enhancement statute.  We reject the People's concession to the legal merit of the writ petition because that concession is wrong—as we explain below.[3]

## DISCUSSION

This writ petition presents the following question:  Does a trial court have the authority, in response to a motion to dismiss a crime or enhancement from an indictment due to a lack of evidence supporting newly enacted elements applicable to that crime or enhancement, to resubmit the crime or enhancement to the grand jury to permit the People to present evidence relevant to those new elements?

This presents a question of the existence of a trial court's authority, which is a question of law that we review de novo. (*People v. Lujan* (2012) 211 Cal.App.4th 1499, 1507 (*Lujan*) [inherent authority]; *Cheng v. Coastal L.B. Associates, LLC* (2021) 69 Cal.App.5th 112, 119 [statutory authority].)

---

[3]     Even if the People had further retreated from their position taken before the trial court and indicated a desire not to present evidence to the grand jury, we would still retain jurisdiction to resolve this writ petition because it presents a question of first impression that is of general importance to the bench and bar (*Amie v. Superior Court* (1979) 99 Cal.App.3d 421, 424) and is likely to recur (*Hiona v. Superior Court* (2020) 48 Cal.App.5th 866, 871).

## I.   Background Law

### A.   *Charging crimes, and the ways a defendant may challenge those charges*

#### 1.   *Mechanisms for charging crimes*

In California, a person charged with a crime or an enhancement has the right to a preliminary determination of whether there is sufficient evidence—that is, probable or reasonable cause to believe that they committed that crime or enhancement—to prosecute those charges through trial.  (Cal. Const., art. I, § 14; *Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1025-1026.)  Our state Constitution provides two different avenues for this evaluation:  (1) indictment after evaluation of the evidence by a grand jury; or (2) the filing of an information after evaluation of the evidence by a "magistrate" at a hearing called a "preliminary examination" (or, more informally, a preliminary hearing).  (Cal. Const., art. I, § 14; Pen. Code, § 737.)

A grand jury is a pool of persons drawn from the community at large who "weigh[] criminal charges."  (§§ 888, 905; *People v. Garcia* (2011) 52 Cal.4th 706, 729 (*Garcia I*).)[4]  A grand jury proceeding is an ex parte proceeding in which the prosecutor—without the presence of a judge or the defendant (or defense counsel)—presents evidence in support of proposed

---

[4]   Grand juries in California have two other functions aside from weighing criminal charges—namely, (1) "evaluating misconduct claims against public officials and deciding whether to formally seek their removal from office," and (2) "acting as the public's 'watchdog' by investigating and reporting upon local government affairs."  (*Garcia I, supra*, 52 Cal.4th at p. 729; §§ 922, 919-921, 925 et seq.; *McClatchy Newspapers v. Superior Court* (1988) 44 Cal.3d 1162, 1170 (*McClatchy*); *Goldstein v. Superior Court* (2008) 45 Cal.4th 218, 226 (*Goldstein*).)

charges and enhancements and then instructs the jury on the pertinent law.  (§ 935.)  If a specified number of the grand jurors "decide[s]" that sufficient evidence supports the potential charges and enhancements, then the grand jury returns an indictment which—once the prosecutor files it with the court—becomes the charging document on which the defendant goes to trial.  (§§ 888.2, 669, 917, subd. (a), 938, 940, 944; *Garica I*, at p. 729; *People v. Brown* (1999) 75 Cal.App.4th 916, 932.)

A preliminary hearing is an adversarial proceeding before a judge and with the defendant (and defense counsel) present.  (See *Whitman v. Superior Court* (1991) 54 Cal.3d 1063, 1076.)  When proceeding by way of a preliminary hearing, the prosecutor files a criminal complaint alleging certain crimes and enhancements, the prosecutor presents evidence in support of the complaint's allegations at the preliminary hearing, the defendant may challenge that evidence, and the trial court—who is called a "magistrate" for these purposes—decides whether the evidence establishes probable cause to believe the defendant committed the alleged crimes and enhancements.  (§§ 859, 865, 872, subd. (a).)  If so, the defendant is "held to answer" and the prosecutor must thereafter file an "information" which becomes the charging document on which the defendant goes to trial.  (§§ 738, 739.)

The grand jury and the preliminary hearing are different avenues leading to the same destination—namely, both are a screen to ensure that an accused is not forced to endure the rigors of defending against criminal charges at trial unless the evidence supports a finding of probable cause to believe the accused is guilty of the crimes and enhancements at issue.  (*Guillory v. Superior Court* (2003) 31 Cal.4th 168, 174 (*Guillory*) ["the grand jury serves as the functional equivalent of a magistrate who

8

presides over a preliminary examination on a felony complaint" in that both "'determine whether probable cause exists to accuse a defendant of a particular crime'"].) By limiting when allegations may be prosecuted, the screening function performed by a grand jury and the preliminary hearing also operates as a check on the executive branch, and hence reinforces the separation of powers. (See *Jones v. Superior Court* (1971) 4 Cal.3d 660, 664; *Avitia v. Superior Court* (2018) 6 Cal.5th 486, 491.)

The decision as to which avenue to walk is for *the prosecutor* to make, not the *defendant*. (Cal. Const., art. I, § 14; Pen. Code, § 737; *Guillory*, *supra*, 31 Cal.4th at p. 174 ["'district attorney chooses'" between the two options]; *People v. Crayton* (2002) 28 Cal.4th 346, 360 ["prosecution elect[s]" between the two options].) A defendant has no statutory or constitutional right to elect how they are charged.[5] (*Bowens*, *supra*, 1 Cal.4th at pp. 42-45 [defendant has no constitutional right to insist upon preliminary hearing]; *People v. Reed* (1962) 210 Cal.App.2d 80, 84 [defendant has no constitutional right to insist upon indictment].)

2. *Mechanisms for challenging those charges*

No matter which avenue the People take, a defendant has a right to challenge the resulting indictment or information.

___

[5] For a brief period of time, our Supreme Court held that a defendant who was indicted had a constitutional right to a further preliminary examination to test the sufficiency of the charges. (*Hawkins v. Superior Court* (1978) 22 Cal.3d 584, 593, superseded by constitutional amendment as stated in *Bowens v. Superior Court* (1991) 1 Cal.4th 36 (*Bowens*).) The voters enacted a constitutional amendment that overruled that decision (Cal. Const., art. I, § 14.1), and that amendment has been subsequently upheld (*Bowens*, at pp. 42-45).

Section 995 provides a *statutory* basis for attacking an indictment or information on the ground that the evidence presented to the grand jury (in the case of an indictment) or to the magistrate (in the case of an information) did not provide "reasonable or probable cause" to believe the defendant committed the charged crime or enhancement.  (§ 995, subds. (a)(1)(B) & (a)(2)(B).)  A defendant may also file a *nonstatutory* motion to dismiss an indictment or information when the basis for dismissal is a ground not covered by section 995, such as when the People have obtained both a duplicative information *and* indictment (*Berardi v. Superior Court* (2008) 160 Cal.App.4th 210, 224-225), when the prosecution has impermissibly withheld information bearing on the existence of probable cause from the grand jury or magistrate (*Merrill v. Superior Court* (1994) 27 Cal.App.4th 1586, 1596), or when prosecution of a crime is barred by the statute of limitations as a matter of law (*People v. Lopez* (1997) 52 Cal.App.4th 233, 249-250).

If an indictment or information is dismissed, the People may generally reinitiate a prosecution for felonies only one additional time.  (§ 1387; *Jackson v. Superior Court* (2017) 4 Cal.5th 96, 103; *People v. Trujeque* (2015) 61 Cal.4th 227, 255.)

**B.**     ***The inherent and interstitial authority of courts to fashion procedures and remedies***

In addition to the authority conferred upon trial courts by our Legislature, trial courts also have "inherent powers," derived from our state Constitution, to carry out their duties and ensure the orderly administration of justice.  (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 267; *Bauguess v. Paine* (1978) 22 Cal.3d 626, 635-636, overruled by statute on other grounds; *Swarthout v. Superior Court* (2012) 208 Cal.App.4th 701, 708.)  Although

this authority derives from our state Constitution and is "'not dependent on statute'" (*Swarthout*, at p. 708), our Legislature has nevertheless reaffirmed the existence of this inherent authority in a variety of statutes, including Code of Civil Procedure section 187 and, for appellate courts, Penal Code section 1260. (Code Civ. Proc., § 187 [a court with "jurisdiction" may use "all the means necessary to carry it into effect," including fashioning "any suitable process or mode of proceeding"]; *People v. Walker* (1948) 33 Cal.2d 250, 265-266 [authority under Code of Civil Procedure section 187 applies in criminal cases]; *People v. Ainsworth* (1990) 217 Cal.App.3d 247, 254-255 [same]; Pen. Code, § 1260 [granting appellate courts power to "set aside, affirm, or modify any or all of the proceedings" in criminal cases and "remand . . . to the trial court for such further proceedings as may be just under the circumstances"].) The courts' inherent power includes the power to "fashion[] new forms of procedures when required to deal with the rights of the parties." (*Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, 1377; *Estrada v. Royalty Carpet Mills, Inc.* (Jan. 18, 2024, S274340) __ Cal.5th __ [2024 Cal. LEXIS 123, *7] (*Estrada I*).) However, the courts' inherent authority is interstitial—that is, existing only where the courts otherwise have subject matter jurisdiction and where there are *gaps* in the law; thus, the courts' inherent authority cannot be exercised in a way that conflicts with constitutional or statutory law. (*Estrada I*, at pp. *7-*8; *Weiss v. People ex rel. Dept. of Transportation* (2020) 9 Cal.5th 840, 857; *Citizens Utilities Co. v. Superior Court* (1963) 59 Cal.2d 805, 812-813; *Britts v. Superior Court* (2006) 145 Cal.App.4th 1112, 1129.)

## II.    Analysis

We hold that a trial court, in the exercise of its inherent authority, has the power to reserve ruling on a defendant's motion to dismiss an indictment and to resubmit a crime or enhancement to the grand jury to permit the People to present evidence relevant to new elements of the crime or enhancement added by our Legislature after the initial grand jury proceeding.

As a threshold matter, trial courts certainly have inherent authority over the grand jury, and subject matter jurisdiction over a criminal case arising from an indictment by virtue of the People's filing of the indictment with the court.  Although the grand jury possesses an "independence of judgment" in determining whether evidence supports a particular criminal charge or enhancement (*People v. Superior Court (1973 Grand Jury)* (1975) 13 Cal.3d 430, 439; *McClatchy*, *supra*, 44 Cal.3d at pp. 1171-1172; accord, *Daily Journal Corp. v. Superior Court* (1999) 20 Cal.4th 1117, 1128 [noting that "the supervisory role of the [trial] court is sharply restricted" regarding matters entrusted to grand jury's purview]), cases dating back to our state's early days confirm that a grand jury is nevertheless "fundamentally a judicial entity" and "'an instrumentality of the courts,'" and hence "'under the control of the court[s]'" (*McClatchy*, at p. 1171; *1973 Grand Jury*, at p. 438; *Guillory*, *supra*, 31 Cal.4th at p. 174; *In re Shuler* (1930) 210 Cal. 377, 405; *Ex parte Sternes* (1889) 82 Cal. 245, 247; *In re Gannon* (1886) 69 Cal. 541, 543).[6]  This is why courts, apart from having the

---

[6]     Although *People ex rel. Pierson v. Superior Court* (2017) 7 Cal.App.5th 402, 408, fn. 5 (*Pierson*) suggests that a grand jury is *not* under the "authority" of the courts when acting as a "criminal grand jury" rather than acting as a watchdog, we reject that

statutory authority to reconvene the prior grand jury or convene a new grand jury after granting a dismissal motion under section 995 (§ 997), also retain the inherent authority to discharge a grand jury (*1973 Grand Jury*, at pp. 438-439; *In re Gannon*, at p. 547) as well as to intervene to prevent the grand jury from taking actions that exceed its statutory authority (*Pierson*, *supra*, 7 Cal.App.5th at p. 412), such as barring a watchdog grand jury from filing a report outside of its statutory authority (*1973 Grand Jury*, at p. 440) or barring disclosure of grand jury materials when such disclosure is prohibited by statute (*McClatchy*, at p. 1167; *Goldstein*, *supra*, 45 Cal.4th at pp. 221-222; *Daily Journal*, at pp. 1124-1125, 1128-1129). The expansiveness of the courts' authority dovetails neatly with the established "propriety of considering common law principles as supplementary to the applicable California statutes relating to grand juries." (*1973 Grand Jury*, at p. 440, fn. 11.)

More to the point, we conclude that this inherent authority encompasses a trial court's power to reconvene the grand jury proceedings to give the People an opportunity, when a defendant has been indicted and any resulting conviction has yet to become final, to present evidence pertinent to new elements that our Legislature has seen fit to add to a charged crime or

---

suggestion because those two functions are often intertwined (e.g., *City of Woodlake v. Tulare County Grand Jury* (2011) 197 Cal.App.4th 1293, 1300 [so noting]), and, more to the point, because judicial oversight of the grand jury is *more* important—not *less*—when a grand jury is functioning as part of the criminal justice system (accord, *Gillett-Harris-Duranceau & Associates, Inc. v. Kemple* (1978) 83 Cal.App.3d 214, 222-223).

enhancement.[7]  Recognizing that trial courts have this inherent
authority is essential to carrying out the courts' duty to give
retroactive effect to an ameliorative law to defendants whose
convictions are not yet final under *In re Estrada* (1965) 63 Cal.2d
740 (*Estrada II*).  (*Tran*, *supra*, 13 Cal.5th at pp. 1206-1207;
*People v. Esquivel* (2021) 11 Cal.5th 671, 675; *Tapia v. Superior
Court* (1991) 53 Cal.3d 282, 301.)  It is also essential to carrying
out the courts' duty to enforce the new, ameliorative law—which
in this context is meant to prescribe new elements the People
must prove, not to give procedurally fortuitous defendants a "get
out of jail free card" as to the amended crime or enhancement.
Recognizing that trial courts have this inherent authority is also
essential to ensuring the orderly administration of justice.  If
courts lacked this authority, a defendant who had been indicted
but whose conviction was not yet final would be entitled to a

_____

**7**	Because the trial court in this case reopened grand jury
proceedings (in front of a different grand jury since the grand
jury that originally indicted defendant expired several years ago),
we need not decide whether a trial court also has the inherent
authority to send the matter to a "magistrate" for a preliminary
hearing on the newly added elements.  Although our state
Constitution now provides that "[i]f a felony is prosecuted by
indictment, there shall be no postindictment preliminary
hearing" (Cal. Const., art. I, § 14.1), and our Supreme Court has
extended this bar to "procedure[s]" "similar" to a preliminary
hearing (*Bowens*, *supra*, 1 Cal.4th at pp. 39, 46), this provision is
aimed at preventing a criminal defendant from getting a second
bite at trying to prove that the evidence is insufficient to hold
him to answer (*id.*, at pp. 47-48).  It is unclear whether it applies
where, as here, the grand jury had no prior occasion to consider
the evidence pertinent to a newly added element.  We leave this
question for another day.

dismissal of any crimes or enhancements to which our Legislature added new elements. Yet a defendant who had been held to answer after a preliminary hearing but whose conviction was not yet final would *not* be entitled to dismissal when new elements are added to a crime or enhancement (because, as discussed below, courts *do* have the authority by statute to send the matter back for a supplemental preliminary hearing). This seemingly random outcome is neither just nor orderly; it certainly does not ensure the orderly administration of justice.

Drawing upon the above-noted principle that a court's inherent authority cannot conflict with statutory limits imposed by our Legislature, defendant argues that section 995a provides the *sole* circumstance under which a trial court may send a case back for further proceedings while reserving a ruling on a motion to dismiss an indictment or information. What is more, defendant continues, section 995a only authorizes sending a case back for a further preliminary hearing and not for further grand jury proceedings. Thus, defendant concludes, our Legislature's silence must be construed as a prohibition that precludes courts from using their inherent authority to reconvene grand juries to hear evidence pertaining to newly added elements of crimes and enhancements.

To be sure, section 995a says what defendant says it says.

Section 995 not only creates a mechanism by which a criminal defendant can move to dismiss an indictment or information due to the absence of "reasonable or probable cause" to support it (§ 995, subds. (a)(1)(B) & (a)(2)(B)), but also empowers a court to "reserve a final ruling on [that] motion" while "order[ing] further proceedings to correct errors alleged by the defendant" *pursuant to section 995a* (§§ 995, subds. (a) & (b),

15

995a, subd. (b)).  Section 995a specifies that a court "may," if the
People so request, "order further proceedings to correct errors
alleged by the defendant" *in an information* if (1) "the court finds
that such errors are minor errors of omission, ambiguity, or
technical defect"; and (2) those errors "can be expeditiously cured
or corrected without a rehearing of a substantial portion of the
evidence."  (§ 995a, subd. (b)(1); see *Garcia v. Superior Court*
(2009) 177 Cal.App.4th 803, 814 (*Garia II*) [listing these
elements]; *Caple v. Superior Court* (1987) 195 Cal.App.3d 594,
601.)[8]  An "error" is "minor" if it is "*comparatively* unimportant"
(*Caple*, at p. 602; *Garcia II*, at pp. 816-817); because this
assessment as well as the assessment as to whether a
"substantial portion" of the evidence would need to be reheard
will vary from case to case, the applicability of section 995a's
procedure must be assessed on a "case by case basis" (*Caple*, at p.
602).  Applying these definitions, courts have held that section
995a does not permit further preliminary hearing proceedings to
correct errors in evidentiary rulings (*Tharp*, *supra*, 151
Cal.App.3d at p. 220 [so holding, because an evidentiary ruling is
not an "omission"]), in suppression rulings (*Loverde v. Superior
Court* (1984) 162 Cal.App.3d 102, 104-105 [so holding, because
there was no "ambiguity"]), or to give the People the opportunity

---

8       Section 995a abrogated Supreme Court precedent holding
that a trial court could not order further proceedings except to
remedy "clerical" errors because doing so was, in the Court's
view, an impermissible "circumvent[ion of] the longer route of
rearresting a discharged defendant, refiling the case and
beginning prosecution anew."  (*Burnett v. Superior Court* (1974)
12 Cal.3d 865, 871-873 (*Burnett*); see also *id*. at pp. 870-873; see
generally *Tharp v. Superior Court* (1984) 154 Cal.App.3d 215,
219 (*Tharp*) [noting how section 995a abrogated *Burnett*].)

16

to cure deficiencies that were not "minor" (*Garcia II*, at pp. 806, 818). Section 995a has no provision whatsoever for ordering further proceedings before a grand jury when a defendant challenges an indictment.[9]

But section 995a's language does not preclude a trial court, in the exercise of its inherent authority, from ordering further proceedings before a grand jury in response to the creation of new elements by our Legislature. We reach this conclusion for three reasons.

First, and as a general matter, while defendant is correct that there is a "settled principle of statutory interpretation that if a statute contains a provision regarding one subject, that provision's omission in the same or another statute regarding a related subject is evidence of a different legislative intent" (*People v. Arriaga* (2014) 58 Cal.4th 950, 960), the principle does not—as defendant insists—inevitably or necessarily mean that legislative silence on a topic forecloses the exercise of a court's inherent authority, particularly given that our Legislature enacts statutes against the backdrop of the existence of that authority. "[G]aps left unaddressed by statutes"—that is, legislative silence—are still gaps, and may be filled by courts through the exercise of their inherent authority in the absence of a clear legislative intent to the contrary that goes beyond the silence itself. (*Lujan, supra,* 11 Cal.App.4th at p. 1507; *People v. Vaesau* (2023) 94

---

**9** Section 995a permits a court to "order" that an indictment be amended (1) to list the names of grand jury witnesses omitted from the indictment, and (2) to add the district attorney's signature. (§ 995a, subd. (a).) Because these interlineations can be made by the trial court itself, section 995a neither requires nor contemplates further proceedings before the grand jury.

17

Cal.App.5th 132, 150-151; cf. *Estrada I*, *supra*, 2024 Cal. LEXIS at pp. *8-*9, *12-*18 [courts' inherent authority to dismiss claims due to manageability considerations in class actions and in other certain "limited circumstances" does not confer inherent authority to dismiss claims on that basis in Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.) cases, which Legislature prescribes are not subject to class action procedures].)

Second, even if we were to view section 995a's silence as evincing a legislative intent to allow further preliminary hearing proceedings but not further grand jury proceedings, that dichotomy is irrelevant to this case because section 995a does not speak to the issue presented here. By its plain text, section 995a authorizes a court to reopen a preliminary hearing proceeding only to "correct *errors*" (if those errors meet the statute's other requirements). (§ 995a, subd. (b)(1), italics added.) But where, as here, the issue is solely the absence of evidence relevant to elements of a crime or enhancement *that did not exist at the time of the preliminary hearing*, there was no error in the preliminary hearing proceeding: On the law and the evidence in existence at the time of the preliminary hearing, the magistrate did not err. (*Mendoza*, *supra*, 91 Cal.App.5th at pp. 60-61 [accepting concession of parties that "there was [no] error in the original commitment" when the law changed thereafter]; accord, *Burnett*, *supra*, 12 Cal.3d at p. 873 [review of preliminary hearing looks to "the testimony presented"], italics omitted.) Thus, in our view, section 995a does not address the situation posed by the addition of new elements that *Estrada* II renders retroactively applicable, so a trial court's power to reopen *any* proceedings—either preliminary hearing proceedings or grand jury proceedings—

18

stems not from section 995a, but instead from its inherent authority.[10]  And to hold that *no* such inherent authority exists would force us to read Assem. Bill No. 333 as immunizing so-called pipeline defendants—whether charged by indictment or information—from criminal liability for any crimes or enhancements amended prior to trial.[11]  Assem. Bill No. 333 purports to do many things, but it does not purport to grant such immunity.  A court may therefore exercise its inherent authority to reopen grand jury proceedings in this context.  Defendant resists this conclusion by citing *Currie v. Superior Court* (1991) 230 Cal.App.3d 83, but *Currie* merely held a trial court lacked the

---

[10]  Indeed, we harbor doubt that section 995 is the proper vehicle for moving to dismiss an indictment or information in this context because, at the time of the initial grand jury proceedings or preliminary hearing, there *was* probable or reasonable cause to proceed, and the deficiency defendant alleges is solely due to the retroactive application of a later-enacted statute.  (Accord *Rodas-Gramajo v. Superior Court* (2023) 92 Cal.App.5th 656, 672, 680 (*Rodas-Gramajo*) (conc. opn. of Tucher, J.) [expressing similar doubt]; but see *id.* at pp. 663-664 (maj. opn. of Rodríguez, J.) [validating use of section 995 motion to dismiss when the law has changed].)  However, we leave this question for another day.

[11]  Although *Estrada II* gives the benefit of retroactively applicable laws to any defendants whose convictions are not yet final on direct appeal, one subset of defendants with nonfinal convictions—namely, those who were found guilty at trial by a jury that was instructed to find the new elements of a crime or enhancement—would not be immune because the jury's verdict and findings as to the new elements render harmless any deficiency in the quantum of evidence before the grand jury. (*People v. Becerra* (2008) 165 Cal.App.4th 1064, 1071 [collecting cases].)

inherent authority to reopen preliminary hearing proceedings in response to a *nonstatutory* motion to dismiss when the defendant in that case was not entitled to one under section 995a (*id.* at pp. 88, 90-92); *Currie* therefore deals with a court's end run around statutory procedures.  Here, the statutory procedure at issue—section 995a—simply does not apply.

Third and lastly, even if we were to rule that section 995a does apply (as did *Mendoza, supra*, 91 Cal.App.5th at pp. 58-62 and *Rodas-Gramajo, supra*, 92 Cal.App.5th at pp. 664-671), we would construe it as not precluding a trial court's inherent authority to reopen grand jury proceedings because the contrary construction would lead to what we view as absurd results. (*People v. Leiva* (2013) 56 Cal.4th 498, 506 [a court may "'reject a literal construction'" of a statute "'that would lead to absurd results'"].)  If, as defendant suggests, we were to construe section 995a as a bar to reopening proceedings in the context of this case, then further proceedings would be available only (1) for those defendants whose prosecutions had been initiated by preliminary hearing, and (2) if the statutory amendments were not so extensive as to make the "error" no longer "minor" in the context of that particular case.  This would mean that a new statute adding elements to a crime or enhancement would render pipeline defendants absolutely immune from liability for that crime or enhancement if (1) their prosecution had been initiated by grand jury, (2) the scope of the amendments was extensive (rather than "minor"), or (3) there had already been a prior reopening of preliminary hearing proceedings due to prior amendments of the same crime or enhancement (thereby implicating the one-refiling rule).  Although laws redefining and narrowing crimes and enhancements (and rendering them

20

subject to re-litigation) are a relatively new innovation, they are becoming increasingly commonplace.  Yet conferring immunity to pipeline defendants by default—due to the absence of a procedure to address the newly enacted elements—is nowhere documented as an intended purpose of these new laws and leads to results that turn on fortuity rather than rationality, thereby summoning the very real specter of invalidation under equal protection principles.  (See *People v. Turnage* (2012) 55 Cal.4th 62, 74-75 [differential treatment of criminal defendants that does not involve a suspect class or fundamental right must be rational]; accord *Rodas-Gramajo*, at pp. 678-679 (conc. opn. of Tucher, J.) [coming to same conclusion in this context].)  We therefore construe section 995a in this manner to avoid such potential invalidation.  (*People v. Miracle* (2018) 6 Cal.5th 318, 339 ["'a statute must be construed, if reasonably possible, in a manner that avoids a serious constitutional question'"].)

**DISPOSITION**

The petition is denied.

**CERTIFIED FOR PUBLICATION.**


_____, J.

HOFFSTADT

We concur:


_____, P. J.

LUI


_____, J.

CHAVEZ